**GREENBERG TRAURIG, LLP**
Christopher R. Miltenberger, Esq. (Nevada Bar No. 10153)
miltenbergerc@gtlaw.com
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone:      (702) 792-3773
Facsimile:      (702) 792-9002

**GREENBERG TRAURIG, LLP**
Daniel J. Tyukody, Esq. (California Bar No. 123323)
(Admitted *Pro Hac Vice*)
tyukodyd@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

*Attorneys for Defendants Paysign, Inc.,*
*Mark R. Newcomer, Mark Attinger, and Daniel Spence*

## UNITED STATES DISTRICT COURT

## DISTRICT COURT OF NEVADA

| IN RE PAYSIGN, INC. SECURITIES LITIGATION | Case No.:  2:20-cv-00553-GMN-DJA |
|---|---|
| | Hon. Gloria M. Navarro |
| | <u>CLASS ACTION</u> |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES LAWS** |
| | **ORAL ARGUMENT REQUESTED** |

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada  89135
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' opposition brief ("Opposition" or "Opp.") to Defendants' motion to dismiss ("MTD") the Consolidated Amended Class Action Complaint ("CAC") only demonstrates why a dismissal with prejudice is appropriate.[1] As pointed out in Defendants' MTD, the key allegations in the CAC are plainly insufficient under Ninth Circuit and U.S. Supreme Court precedent, and the Opposition offers no reason to believe they could be sufficiently improved by further amendment. This is a frivolous case, based upon a fundamentally flawed theory of fraud.

The CAC is primarily based upon Paysign senior management's supposedly false statements regarding their assessment of the adequacy of internal controls pursuant to the requirements of the Sarbanes-Oxley Act ("SOX") in Paysign's three quarterly SEC filings that preceded the filing of its 2019 Form 10-K ("2019 10-K").[2] The 2019 10-K identified a number of material weaknesses in Paysign's internal controls. As pointed out in Defendants' MTD, cases based upon material weaknesses in internal controls are routinely dismissed, primarily because they usually fail to adequately allege the required element of scienter.[3] The Opposition's principal cases only support this proposition, as they illustrate the extreme set of circumstances, and the type of specific allegations that are required, in order to survive a motion to dismiss, nothing close to which is alleged in the CAC.

In the CAC, there are two quite different types of internal control weaknesses alleged. (The Opposition attempts to add a third—more on that below.) The primary allegation concerns

---

[1] As with Defendants' opening brief, all emphasis in this reply brief is added unless otherwise noted, and we delete internal citations from quoted cases. All "¶" references herein are to respective paragraphs of the CAC. As in the MTD, all references to the "Reform Act" or "PSLRA" correspond to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4. All references to the "Individual Defendants" correspond to Mark R. Newcomer (CEO), Mark Attinger (CFO), and Daniel Spence (Chief Technology Officer).

[2] Only Individual Defendants Newcomer and Attinger signed SOX certifications. Spence, the Chief Technology Officer, was not required to do so.

[3] *See, e.g.*, *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007) ("a lack of internal controls generally does not suffice to show scienter"); MTD at 2 & n.2 (citing cases).

1

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

Paysign's employment of Arthur De Joya ("De Joya"), a former Paysign CFO, whose work at Paysign supposedly violated the terms of De Joya's Cease and Desist Order ("Consent Order" or "Order") with the SEC.  It is undisputed that the Consent Order concerned matters entirely unrelated to Paysign.

The second internal control weakness involved the "ineffective design, implementation and monitoring of information technology general controls pertaining to privileged user accounts" which the CAC alleges related to "software updates" that "led to inaccurate balances tabulated for cardholder accounts."  ¶¶ 60, 62, 68, 71.

To this mix, the Opposition attempts to add a third supposed internal control weakness (which it unhelpfully labels a "second" weakness), based on CW6's assertion that "journal entries contained basic errors."  Opp. at 1.  This issue was not identified in the 2019 10-K, or alleged in the CAC, as constituting a material weakness.  This attempt to amend a complaint via an opposition brief is obviously procedurally improper.[4]  However, even if one were to accept this amendment by opposition brief, it only hurts Plaintiffs' case because as the CAC itself says, these journal entries were corrected prior to the publication of Paysign's financial statements. ¶ 45.  It is absurd to base a securities fraud case upon procedures that were undertaken to make sure the correct financial information was publicly reported.

The Opposition correctly notes that Defendants primarily base their Motion on the CAC's failure to adequately allege the required Rule 10b-5 element of scienter.  The CAC premised its scienter allegations on (i) purported Confidential Witness ("CW") statements, and (ii) insider trading allegations against two of the three Individual Defendants.  Neither of these sets of allegations are adequate under the Reform Act.  The CW allegations are an exemplar of what does not suffice under the Ninth Circuit's decision in *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009).  As to insider trading, it is the same story, and Plaintiffs' cases are highly distinguishable.  The CAC's allegations are woefully inadequate under a long line of Ninth Circuit

---

[4] *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original).

2

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

authority, and the Court should grant the Motion and dismiss the case with prejudice.

## II.    THE CAC FAILS TO ADEQUATELY ALLEGE SCIENTER

It is not correct to say that "[t]here is no dispute that Defendants repeatedly misled investors about the effectiveness of Paysign Inc.'s internal controls," or that "Defendants do not contest that they made numerous materially false statements repeatedly throughout the Class Period . . . ." Opp. at 1. Of course, Defendants contest both points, and maintain that falsity is not alleged with the "particularity" required under the Reform Act,[5] which the CAC fails to do. In this case, there is no need to address falsity or materiality at any great length, because the CAC is so plainly deficient when it comes to the statutorily required scienter pleading requirement, as interpreted by the Supreme Court in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) and subsequent Ninth Circuit authority.

### A.    The Allegations Pertaining To De Joya Are Insufficient

The De Joya allegations are largely based upon a fundamental falsehood, namely that Paysign supposedly "admitted" in its 2019 10-K to having violated the terms of the Consent Order. *E.g.*, ¶ 7 ("the Company *has admitted* that De Joya's assistance in preparing the Company's financial statements for 2019 were impermissible because he was 'barred' from practicing or appearing before the SEC.") That is simply untrue. As Defendants pointed out in their MTD, *and as alleged in the CAC itself*, Paysign disagreed with its auditor on this point:

> "[A] … material weakness *cited by the auditors* was that the Company lacked sufficient monitoring and disclosure controls when employing a part-time employee. *The Company believes that it had sufficient monitoring and disclosure controls in place* and received an opinion of counsel concluding that such work did not constitute a compliance failure. In any event, this situation has already been resolved by the individual no longer being employed by the Company."

[5] *See Zucco*, 552 F.3d at 990 (securities fraud complaints are "subject to the more exacting pleading requirements of the PSLRA, which *significantly altered pleading requirements* in securities fraud cases" and "require that a complaint *plead with particularity* both falsity and scienter"); *In re Countrywide Fin. Corp.*, 588 F. Supp. 2d 1132, 1185 (C.D. Cal. 2008) ("The PSLRA requires that falsity allegations in securities fraud claims meet an even higher standard than Rule 9(b)'s particularity requirement."); 15 U.S.C. § 78u-4(b)(2) (PSLRA requires complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind").

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

3

¶ 80 (quoting 2019 Form 10-K at 30, which is attached to Defendants' RJN as Ex. A); *see* MTD at 5-6. Bizarrely, the Opposition accuses Defendants of "[r]eaching outside the pleadings to impermissibly introduce new facts" (Opp. at 20), based upon statements in Defendants' MTD saying that the 2019 10-K did not admit that Defendants believed that De Joya's employment violated the terms of the Consent Order. *See* MTD at 6. Not only is that statement not "outside the pleadings," **it is specifically alleged in the operative pleading**. *See* ¶ 80.

The Opposition falsely asserts no fewer than six times that "Defendants ultimately *admitted* that employing De Joya was a material weakness in internal controls . . . ¶¶ 40-45, 81," or words to similar effect.[6] That is nonsense. Note, for starters, the Opposition's failure to cite paragraph 80 of the CAC, which makes clear that Defendants made no such admission. Next, the paragraph in the CAC that the Opposition repeatedly cites for Defendants' supposed admission is paragraph 79, *which as expressly alleged in the CAC itself,* **quotes Paysign's auditor's opinion—not Paysign's opinion**. ¶ 79 ("A subsection entitled '*Auditor Opinion on the Internal Control Over Financial Reporting*'" contained a conclusion that employing De Joya violated the terms of the Consent Order). Obviously, a third party's statement cannot be considered to be the admission of a party.[7]

---

[6] Opp at 1; *see also* Opp. at 3 ("the Company admitted in its Annual Report that allowing [De Joya] to work on financial matters constituted an internal control deficiency based on [the Consent Order])"; 7 ("the 2019 10-K admitted that 'the Company lacked sufficient monitoring and disclosure controls to prevent and terminate an individual barred from practicing before the [SEC] who assisted in accounting matters related to the preparation of its financial statements for 2017, 2018 and 2019.' ¶ 79"); 11 ("On April 6, 2020, the Company's Annual Report admitted that material weaknesses in internal controls over financial reporting existed because De Joya was allowed to work on financial statements for 2017, 2018 and 2019 . . . ."); 11-10 ("Defendants admitted that employing De Joya was a material failure of the Company's internal controls over financial reporting . . . . Post-class admissions bolster an inference of scienter."); 19 ("**Defendants themselves** admitted that De Joya's very employment was a control weakness, and that they permitted him to be involved in SEC reporting in violation of his ban in 2019 10-K. ¶ 79") (emphasis in original).

[7] Footnote 3 in the Opposition is also bizarre. Opp. 3 & n.3. Defendants' statements in their MTD simply said that in the 2019 10-K, Defendants did not agree with the opinion of Paysign's auditors on the De Joya issue. Something is either a party admission, or it is not. In this case there was no admission, no matter how many times Plaintiffs say otherwise. Thus, footnote 3's meanderings about the substance of the advice given, advice of counsel being an affirmative defense, along with its vague insinuations of improper motives, etc., are entirely irrelevant. The substance of the

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

4

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Putting aside the admission issue, on the substance of Defendants' alleged scienter as supposedly pled in the CAC, there is no allegation as to *when* any Individual Defendant supposedly became aware of Paysign's auditor's opinion about De Joya's employment, as it relates to the timing of the supposedly false SOX certifications. The CAC alleges that Paysign's auditor during the purported Class Period (running from March 12, 2019 to March 31, 2020) had been engaged *since 2017*. ¶ 38. There is no allegation that that the auditor raised any concerns about De Joya's employment in the years prior to 2019, or precisely when during 2019 it first raised those concerns. The most reasonable inference that arises from the facts alleged in the CAC is that this issue arose in connection with the audit work done in preparation for the filing of the 2019 10-K, which would necessarily have occurred after the filing of the allegedly false SOX certifications at issue.

The standard of review for a pleading's adequacy is different in a case governed by the PSLRA than anything else in the federal civil system. While the Opposition's citation to *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784 (9th Cir. 2017) for the prevailing Rule 12(b)(6) standard is correct so far as it goes (Opp. at 7), the more relevant part of *Atossa* goes on to say that "[b]ecause Plaintiffs allege violations of Section 10(b) and Rule 10b-5, their amended complaint must satisfy the dual pleading requirements of [FRCP] 9(b) and the [Reform Act, requiring that] Plaintiffs plead with particularity both falsity and scienter." *Id*. at 793-94. Pursuant to *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002), a court must consider "*all* reasonable inferences to be drawn from the allegations, *including inferences unfavorable to plaintiffs*." Uniquely, in cases governed by the PSLRA, inferences are not interpreted in a plaintiff's favor where logic dictates otherwise. *See id.* at 896 ("To accept plaintiffs' argument that the court is required to consider only inferences favorable to their position would be to eviscerate the PSLRA's strong inference requirement by allowing plaintiffs to plead in a vacuum.").[8]

opinion of counsel, and whether that advice was good, bad, or indifferent, is simply not at issue here.

[8] *Gompper* was cited with approval by the Supreme Court in *Tellabs*, which also holds that "[t]o determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." 551 U.S. at 323-24.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

In this light, the CAC's Confidential Witness allegations are actually harmful to Plaintiffs' case, as exemplified by CW3, who supposedly stated that "it was known by employees within the Company that De Joya was 'not legally able' to perform certain tasks." ¶ 49. Notice what is left unsaid, namely that CW3 knew that De Joya performed tasks he was not legally able to perform. There is also no allegation that CW3 was in a position to know what was in the minds of Newcomer or Attinger regarding the De Joya issue, including whether CW3 ever spoke to either Newcomer or Attinger about this issue. The Opposition goes out of its way to point out how De Joya's status was common knowledge within the Company. *See, e.g.,* Opp. at 9 ("rank-and-file Paysign employees, knew about the ban"); 17 ("common knowledge at the Company"). However, all of the other CWs are exactly like CW3 when it comes to this issue. Not one of the CWs says that they believed that what De Joya was doing violated the terms of the Consent Decree. Nor do any of these short-term employees claim that they had any communications with Newcomer or Attinger about this issue, or that they have any insight as to what Newcomer or Attinger actually thought about the issue.[9]

Whether De Joya's employment violated the terms of the Consent Decree involves professional judgment. Even if one were to conclude that Paysign's judgment was incorrect, that would still not be enough to allege securities fraud. Mere accounting mistakes and errors in judgment do not constitute securities fraud. Every financial restatement, for example, involves a material error. Yet, the Ninth Circuit cases holding that a restatement or internal controls failure itself is insufficient to adequately allege scienter are legion. *See, e.g., Lloyd v. CVB Fin Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016) ("the mere publication of inaccurate accounting figures . . .

---

[9] Plaintiffs' case law citations supposedly supporting the adequacy of their CW allegations (Opp. at 12-13) only highlights how weak the CAC's allegations are by comparison. *See, e.g., In re BofI Holding, Inc.*, 2017 U.S. Dist. LEXIS 79062, at *41-42 (S.D. Cal. May 23, 2017) (scienter adequately alleged against CEO where CW stated that CEO tried to brush negative audit findings "under the rug" and "clean[] up" audit reports he disagreed with); *Robb v. Fitbit Inc.*, 2017 U.S. Dist. LEXIS 7722, at *16 (N.D. Cal. Jan. 19, 2017) (CW stated he personally generated reports documenting highly inaccurate heart-monitoring products and personally presented them to defendant); *Cornwell v. Credit Suisse Grp.*, 689 F. Supp. 2d 629, 638 (S.D.N.Y. 2010) (CWs stated that defendant executives reviewed specific and regular reports alerting them to substantial accounting problems pertaining to sub-prime mortgage assets).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

without more, does not establish scienter.").[10]  In this case there has not even been a restatement, as the CAC contains no allegation that Paysign committed any kind of financial impropriety during the purported Class Period.

It practically goes without saying that the Opposition's case law, based upon situations where companies supposedly ignored "red flags raised by auditors" (Opp. at 3), is far afield from the facts of this case.  The court in *In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350 (N.D. Ga. 2005), for example, in a case alleging an overstatement of bad debt expense of $255 million, and an overstatement of unbilled receivables of $163 million, *dismissed* the Section 10(b) claim, holding that:

> In order to plead fraudulent accounting practices with particularity, a complaint should show facts that support the inference that the defendants recklessly disregarded the deviance from GAAP or acted with gross indifference to the misrepresentations in the financial statement . . . .  [Plaintiffs'] allegations do not give rise to a finding of scienter.  Plaintiffs are simply challenging the accounting judgment of the company, which is insufficient to establish scienter.

*Id*. at 1374-75.  While it is somewhat surprising that the Opposition cites *BellSouth*, a case that could well have been cited by Defendants for the insufficiency of the CAC's allegations, truth be told there is not anything in the case law that remotely supports Plaintiffs' position.[11]  The Opposition's grasping at straws is, in a way, unsurprising.

---

[10] *See also In re Worlds of Wonder*, 35 F.3d 1407, 1426 (9th Cir. 1994) ("Scienter requires more than a misapplication of accounting principles."); *Hemmer Grp. v. Southwest Water Co.*, 527 F. App'x 623, 627 (9th Cir. 2013) (affirming dismissal because most likely inference was that company "was at most negligent in its failure to maintain proper accounting internal controls"); *Kaplan v. Charlier*, 426 F. App'x 547, 549 (9th Cir. 2011) (complaint dismissed because complaint at most claimed that company's "management was negligent in failing to ensure adequate internal controls and accounting staff").

[11] Plaintiffs' other cited cases about accounting "red flags" are similarly unhelpful.  *In re Tyco Int'l Ltd Multidistrict Litig.*, 2004 U.S. Dist LEXIS 20733 (D.N.H. Oct. 14, 2003) involved "billions of dollars in restatements and corrections," as well as several accounting schemes where the individual defendants "reaped millions of dollars in benefits during the course of the fraud scheme in undisclosed compensation, related party transactions, and stock sales at inflated prices." *Id*. at *36-37.  *SEC v. Small Bus. Capital Corp.*, 2013 U.S. Dist. LEXIS 116607 *45 (N.D. Ca. Aug. 16, 2013) involved a situation where the fund manager approved offering documents prohibiting unsecured loans, then created unsecured loans that it failed to disclose to investors, explaining how the accounting "would be deceptively used to absorb the Funds' expenses.").

7

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**B.    The Allegations Pertaining To Internal Control Deficiencies Related To Software Updates Are Insufficient.**

The second alleged internal control deficiency relates to what the CAC describes as a software error that resulted in customers being sent erroneous statements about their account balances. ¶¶ 16, 48, 51.  However, there is no allegation that this issue was not promptly addressed by Paysign upon discovery, that false financial statements were ever issued as a result thereof, or that Paysign customers' accounts were not appropriately credited after the error was discovered.  In other words, it was a mistake, but mistakes alone are not sufficient under the securities laws.  *See, e.g., Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (even allegations of "serious operational problems" do not satisfy PSLRA pleading standards).[12]

The only reason why this set of facts is alleged to somehow be actionable stems from an innocuous risk disclosure statement in Paysign's *2018* Form 10-K, saying that Paysign relies upon "its employees, systems, and processes . . . to process and facilitate . . . transactions in an efficient, uninterrupted and error-free manner." ¶ 59.  This is the only instance in the CAC where Spence—Paysign's CTO—is alleged to have been a "speaker" of a statement potentially actionable under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), because he signed the 2018 Form 10-K.  (Note as well that same statement went on to say, "'We may also experience software defects, development delays and installation difficulties, any of which could harm our business . . . .'" ¶ 59 (quoting 2018 Form 10-K).

The Opposition says that this issue was identified during the Class Period (which runs from March 12, 2019 to March 31, 2020).  *See* Opp. at 10 ("According to CW2, the COO of Paysign told Newcomer about this material weakness during the Class Period.").  Thus, it is impossible to understand how Spence's signing the 2018 Form 10-K, could give rise to his supposed liability regarding events that would not occur until 2019.  The real reason for these ridiculous allegations

---

[12] *See also In re Impac Mortg. Holdings, Inc.*, 554 F. Supp. 2d 1083, 1101 (C.D. Cal. 2008) ("Calling executives bad managers . . . does not plead fraud."); *Ferreira v. Funko Inc.*, 2021 U.S. Dist. LEXIS 59102, at *94 (C.D. Cal. Feb. 25, 2021) ("The second-guessing of management decisions by confidential witnesses does not provide a basis for securities fraud.").

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

being raised for the first time in the CAC (Spence was not named in any of the original complaints), is to bring Spence into the case as an Individual Defendant simply because he sold stock during the purported Class Period.

Regarding Attinger's and Newcomer's presumed knowledge of this software-related internal control issue, the CAC does not state when this issue first became identified in relation to any of the SOX certifications they signed. Recognizing that one has an operational problem that needs to be fixed is different from an assessment of internal controls with respect to that issue, which typically would occur later. Defendants are not "attempt[ing] to elevate the standard for pleading scienter" (Opp. at 13) as to Attinger's and Newcomer's knowledge—*the standard is already elevated* pursuant to statute and binding Supreme Court and Ninth Circuit authority. Plaintiffs are not entitled to a presumption that when Attinger and Newcomer signed the SOX certifications at issue, they did so knowing there was a material weakness with respect to this issue.[13]

### C.   The Opposition's Attempt To Supplement The CAC With Allegations Pertaining To "Journal Entries" Is Insufficient

While a fair reading of the CAC is that it only alleges the two internal control deficiencies discussed above, the Opposition attempts to add a third (which it calls a "second"), asserting that "journal entries contained basic errors that rendered the Company unable to properly recognize

---

[13] The Opposition's cases relating to senior management's presumed knowledge based on facts and circumstances (Opp. at 13-14) are easily distinguishable. *See Christine Asia Co. v. Yun Ma*, 718 F. App'x 20, 22 (2d Cir. 2017) (high-level management concealed secret meeting with Chinese officials who threatened "huge repeating fines" on company); *Abdo v. Fitzsimmons*, 2021 U.S. Dist. LEXIS 30618, at *40-41 (N.D. Cal. Feb. 17, 2021) (directors were told in writing and in audit committee meetings about known fraud by senior management in connection with statements made to investors, and that Deloitte would no longer work for the company); *In re MF Global Holdings Ltd.*, 982 F. Supp. 2d 277, 320 (S.D.N.Y. 2013) (company's internal audit department issued several reports criticizing company's "existing policies and noted failures to follow those policies," but officers still "assured investors that [the company's] internal controls and capital and liquidity management were strong and adequate"); *Dobina v. Weatherford Int'l,* 909 F. Supp. 2d 228, 246-47 (S.D.N.Y. 2012) (plaintiffs plausibly alleged that defendant was aware of internal control failures where CW stated that tax audits had "turned up multiple control deficiencies . . . that were expressly raised" with him, including in audit committee meetings).

9

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

revenue … constitute[ed] a second material weakness in internal controls ….” Opp. at 1-2. While this faux amendment of the CAC is obviously procedurally improper, it really does not matter if the Court considers its substance, because it only reveals how far out of touch Plaintiffs are with the securities laws.

This addition is derived from the supposed statements of CW6—who was allegedly employed for all of about a month (¶ 54)—based upon his or her supposedly successful efforts to *correct* Paysign's financials *prior to* their publication in its SEC-filed financial statements. ¶ 54 (“At the end of 2019, CW6 worked with Defendant Attinger to *correct the material errors* in the Company's general ledger, amending journal entries to *fix the errors*.”) These errors supposedly occurred “because the controller failed to initiate an automatic feed that transferred the Company's bank account information into NetSuite, an accounting software used by the Company.” ¶ 54. This issue is *not* identified in the 2019 10-K as a material weakness, and while the factual allegations made by CW6 certainly exist in the CAC, there is no allegation in the CAC that this set of facts constituted a material weakness, or that fixing these errors was regarded by Paysign or its independent auditor as constituting a material weakness. *See* Opp. at 2 (referring to this issue as a “material weakness in internal controls . . . which the Company did not specifically disclose”).

While the Opposition states that “Defendants fail to address that CW6 identifies a second material weakness in internal controls . . . related to basic errors in journal entries that rendered the Company *unable to properly recognize revenue*” (Opp. at 21), the CAC itself does not allege—nor could it—that publicly reported revenue during the purported Class Period was in error. At most, CW6's allegations amount to the assertion that without that person's efforts over the course of the month he/she worked at Paysign, the Company *might* have reported erroneous financial results. The Opposition offers no legal support for the absurd proposition that correcting errors before financial statements are published somehow supports an allegation of fraud under the federal securities laws. *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 367 (D.N.J. 2007) (no scienter where logical inference from defendants' efforts to correct ongoing accounting problems was that defendants “indeed designed and kept upgrading [the company's] control measures”).

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

10

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

### D.      The Insider Trading Allegations Are Insufficient

The insider trading allegations are insufficient because they involve relatively small amounts of Spence's and Newcomer's total equity in Paysign, along with no indication of suspicious timing.  The sales involved only 2.2% of Newcomer's holdings, and just 1.4% of Spence's holdings, which are modest sums that cannot support a cogent and compelling inference of scienter.  The Ninth Circuit has held that even double-digit sale percentages of total holdings are inherently nonsuspicious for purposes of evaluating insider trading allegations.[14]  Plaintiffs attempt to challenge this well-established rule, but their cases are either inaccurately described, or easily distinguishable.  For example, in *Nursing Home Pension Fund, Local 114 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004), the Ninth Circuit applied the insider trading analysis to "a novel situation" where Larry Ellison, Oracle's CEO, sold "just" 2.1% of his total holdings for around $900 million.  The court said that where "stock sales result in a truly astronomical figure," the fact that they represented a small portion of a defendant's holdings may be given "less weight."  *Id.* Nothing in this case (where Newcomer allegedly sold a total of $2.2 million, and Spence $1.3 million during the purported Class Period) is remotely similar to the situation presented in *Oracle.* The Opposition also misstates the ruling in *Brendon v. Allegiant Travel Company*, 412 F. Supp. 3d 1244 (D. Nev. 2019).  That case does not hold that "insider sales supported an inference of scienter where the defendant sold as little as 0.43% of his holdings."  Opp. at 22.  Instead, the court in *Allegiant* held precisely the opposite, namely that even when a CEO's total sales during the class period amounted to more than $83 million (with sales ranging between 0.43% to 8.6% of his total holdings), such sales "did ***not*** support a strong inference of scienter on their own."  *Id.* at 1262.

---

[14] *See, e.g., Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (suggesting that sales amounts larger than 37% would be necessary to support a strong inference of scienter); *In re Immersion Corp. Sec. Litig.*, 2011 U.S. Dist. LEXIS 145160, at *30 (N.D. Cal. Dec. 16, 2011) ("The Ninth Circuit has held … that to support scienter, sales amounts larger than 37% of a defendant's holdings ordinarily are required."); *Applestein v. Medivation, Inc.*, 2011 U.S. Dist. LEXIS 92230, at *28 (N.D. Cal. Aug. 18, 2011) ("In [*Metzler*], the Ninth Circuit indicated that sales amounts larger than 37% would be needed to support a strong inference of scienter"); *In re Silicon Graphics*, 183 F.3d 970, 987-88 (9th Cir. 1999) (no scienter inference where a defendant's stock sales were in excess of 75.3% of stock holdings, and four defendants' sales were between 2.6% and 7.7%).

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile:   (702) 792-9002

11

Plaintiffs in *Allegiant* were then given leave "to add further allegations in support of scienter, if they exist." *Id.*

The timing of Spence's and Newcomer's relatively small sales also does not support scienter, because they were made six months before the 2019 10-K was filed. Plaintiffs argue that the timing was nonetheless suspicious because Defendants allegedly knew that "the Company's material control weaknesses would likely cause the Company's stock price to fall," but "had no idea . . . when that disclosure would occur." Opp. at 22. This vague allegation does nothing to show that the sales were made "at times calculated to maximize the personal benefit from undisclosed inside information," especially when Spence and Newcomer did not sell any shares in the summer of 2019, while their profits could have been as much as 50% higher. *See Zucco*, 552 F.3d at 1005 (9th Cir. 2009).

## III.    CONCLUSION

The CAC presents an extraordinarily weak case that demonstrates why the Reform Act was enacted in the first place. It should be dismissed with prejudice.

Respectfully submitted this 1st day of June, 2021.

**GREENBERG TRAURIG, LLP**

By:    */s/ Christopher R. Miltenberger*
CHRISTOPHER R. MILTENBERGER
Nevada Bar No. 10153
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135

DANIEL J. TYUKODY
California Bar No. 123323
(Admitted *Pro Hac Vice*)
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121

*Attorneys for Defendants Paysign, Inc.,*
*Mark R. Newcomer, Mark Attinger and Daniel Spence*

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 1st day of June 2021, a true and correct copy of the foregoing ***Reply in Support of Motion to Dismiss Consolidated Amended Class Action Complaint for Violations of the Securities Laws*** was filed electronically via the Court's CM/ECF system.  Notice of filing will be served on all parties registered to this case by operation of the Court's CM/ECF system, and parties may access this filing through the Court's CM/ECF system.

*/s/ Andrea Lee Rosehill*
An employee of Greenberg Traurig, LLP

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada  89135
Telephone:  (702) 792-3773
Facsimile:  (702) 792-9002

13

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT