**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330.4505
Facsimile: (702) 825.0141
Email: andrew@mlolegal.com

*Liaison Counsel for Lead Plaintiffs*

**POMERANTZ LLP**
Omar Jafri
(admitted *pro hac vice*)
Genc Arifi
(admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:   ojafri@pomlaw.com
         garifi@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| IN RE PAYSIGN, INC. SECURITIES LITIGATION | Case No: 2:20-CV-00553-GMN-DJ<br><br>HON. GLORIA M. NAVARRO<br><br>CLASS ACTION<br><br>**NOTICE OF LEAD PLAINTIFFS' CONSENTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

## NOTICE OF LEAD PLAINTIFFS' CONSENTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Lead Plaintiffs Johann Francisconi and Raheel Shahzad (collectively, the "Plaintiffs"), on behalf of themselves and all members of the proposed Settlement Class, hereby respectfully move this Court for an Order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (1) preliminarily approving the proposed settlement set forth in the Stipulation and Agreement of Settlement dated December 15, 2023 (the "Stipulation"); (2) preliminarily certifying the Settlement Class; (3) appointing Strategic Claims Services as the Claims Administrator; (4) appointing Plaintiffs as Class Representatives and Lead Counsel, Pomerantz LLP, as Class Counsel; (5) approving the proposed form and manner of disseminating notice to the Settlement Class; (6) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement, Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' service award request; (7) setting a date for the Final Approval Hearing at which the Court will consider the final approval of the settlement and entry of the proposed Final Judgment, the Plan of Allocation, Lead Counsel's application for an award of attorneys' fees and expenses, and Plaintiffs' service award request; and (8) granting such other and further relief as may be required.

This Motion is based on the following memorandum of points and authorities and accompanying declaration of Andrew R. Muehlbauer (the "Declaration") and the exhibits attached thereto, including the Stipulation and its accompanying exhibits (filed herewith as Ex. 1) and the Court's file in this action, and any additional evidence or argument that the Court may request.

# TABLE OF CONTENTS

**Page**

NOTICE OF LEAD PLAINTIFFS' CONSENTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT ................................................................................... i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ........................................................................... iii

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................... 3

III.  PRELIMINARY APPROVAL IS WARRANTED ................................... 4

    A.  Both Public Policy and Judicial Policy Strongly Favor Settlement ....................... 4

    B.  The Proposed Settlement is Fair, Adequate, and Reasonable ................................ 5

        1.  The Settlement was the Result of "Serious, Informed, Noncollusive Negotiations" ................................................................................... 6

        2.  The Settlement Does Not Grant Preferential Treatment to Any Settlement Class Member ................................................................. 8

        3.  The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval ................................................................. 9

IV.  THIS COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............... 10

    A.  The Settlement Class Satisfies Rules 23(a)(1)-(4)'s Requirements ...................... 10

    B.  The Settlement Class Meets Rule 23(b)(3) Requirements .................................... 13

V.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE ............ 16

VI.  PROPOSED SCHEDULE OF EVENTS ............................................................ 19

VII. CONCLUSION ............................................................................................... 19

CERTIFICATE OF SERVICE ....................................................................... 21

ii

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591 (1997)...................................................................................................14, 15

*Booth v. Strategic Realty Tr., Inc.,*
   No. 13-CV-04921-JST, 2015 WL 3957746 (N.D. Cal. June 28, 2015) .................................15

*Browning v. Yahoo! Inc.,*
   No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007)......................................5

*Destefano v. Zynga, Inc.,*
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................................10

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974)..................................................................................................................16

*Grant v. Cap. Mgmt. Servs., L.P.,*
   No. 10-CV-2471-WQH BGS, 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013).........................5

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ..................................................................................................6

*Howell v. JBI, Inc.,*
   298 F.R.D. 649 (D. Nev. 2014)................................................................................11, 14, 15

*In re Celera Corp. Sec. Litig.,*
   No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ............................16

*In re China Med. Corp. Sec. Litig.,*
   No. 8:11-1061-JST (ANX), 2013 WL 12126754 (C.D. Cal.
   May 16, 2013).........................................................................10, 11, 13, 14, 15

*In re Cooper Companies Inc. Sec. Litig.,*
   254 F.R.D. 628 (C.D. Cal. 2009) ............................................................................................14

*In re Galena Biopharma, Inc. Sec. Litig.,*
   No. 314CV00367SILEAD, 2016 WL 3457165 (D. Or. June 24, 2016).................................9

*In re Heritage Bond Litig.,*
   No. 02–ML–1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)....................................7

*In re Hyundai and Kia Fuel Econ. Litig.,*
   926 F.3d 539 (9th Cir. 2019) ...........................................................................................13, 15

*In re Juniper Networks, Inc. Sec. Litig.,*
   264 F.R.D. 584 (N.D. Cal. 2009)............................................................................................11

*In re LDK Solar Sec. Litig.,*
   No. C 07-5182 WHA, 2010 WL 3001384 (N.D. Cal. July 29, 2010) ....................................9

iii

*In re NVIDIA Corp. Derivative Litig.*,
  C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...............................7

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................................................................9

*In re Portal Software, Inc. Sec. Litig.*,
  No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ...............................7, 16

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...................................................................................................5

*In re Syncor ERISA Litig.*,
  227 F.R.D. 338 (C.D. Cal. 2005) ............................................................................................12

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ..............................................................................................9

*In re Zynga Inc. Sec. Litig.*,
  No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015).......................... *passim*

*Katz v. China Century Dragon Media, Inc.*,
  No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) .......................7

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................................9

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) .................................................................................................................16

*O'Connor v. Boeing N. Am., Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998) ............................................................................................15

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .................................................................................................5, 9

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................................................16

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
  No. EDCV 08-482-VAP(OP), 2010 WL 2486346 (C.D. Cal. June 15, 2010) .......................16

*Santoro v. Aargon Agency, Inc.*,
  252 F.R.D. 675 (D. Nev. 2008) ...............................................................................................14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...............................................................................................5, 10

*Szymborski v. Ormat Techs, Inc.*,
  No. 3:10-CV-132-RCJ, 2012 WL 4960098 (D. Nev. Oct. 16, 2012) ......................................6

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .....................................................................................................5

*Vinh Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................8, 9

*Vinh Nguyen v. Radient Pharms. Corp.*,
    287 F.R.D. 563 (C.D. Cal. 2012) .................................................................................11

*West v. Circle K Stores, Inc.*,
    No. CIVS040438WBSGGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ......................5, 9

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

**Statutes**

15 U.S.C. § 78u-4(a)(7) ....................................................................................................18

§ 10(b) of the Securities Exchange Act of 1934 ...............................................................3

§ 20(a) of the Securities Exchange Act of 1934 ...............................................................3

§ 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995 ...........................8

Private Securities Litigation Reform Act of 1995 .......................................8, 16, 17, 19

SEC Rule 10b-5 .................................................................................................................3

**Other Authorities**

Janeen McIntosh, Svetlana Starykh, and Edwards Flores, *Recent Trends in Securities
    Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023)
    https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Yea
    r_Trends.pdf..............................................................................................................9, 10

*Manual for Complex Litigation, Fourth* § 13.14 (FJC 2004) .........................................5

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiffs Johann Francisconi and Raheel Shahzad (collectively, the "Plaintiffs"), by and through Lead Counsel, Pomerantz LLP ("Pomerantz"), hereby move for preliminary approval of the proposed settlement of this securities class action (hereafter the "Settlement") and are authorized to report to the Court that Defendants support approval of the Settlement.

## I.   INTRODUCTION

To resolve all outstanding claims on behalf of the Settlement Class and in exchange for comprehensive releases, Defendants Paysign, Inc. ("Paysign" or the "Company"), Mark Newcomer ("Newcomer"), Mark Attinger ("Attinger"), and Daniel Spence ("Spence") (collectively, the "Defendants") have agreed to pay or cause to be paid $3,750,000, in cash (hereafter the "Settlement Amount"), the terms of which are set forth in the Stipulation and Agreement of Settlement dated December 15, 2023 (the "Stipulation"). [1] The Settlement is in the best interest of the Settlement Class and represents a significant recovery. As such, this Court should preliminarily approve the Settlement, certify the Settlement Class for settlement purposes only, approve the notice and administration program on which the parties have agreed, and set a date for a final approval hearing. If approved, the Settlement will resolve this Action in its entirety.

The proposed Settlement is the result of arm's-length negotiations over months with an experienced mediator, Michelle Yoshida of Phillips ADR. Experienced counsel conducted these negotiations based on their initial investigation and complaint, their successfully overcoming Defendants' motion to dismiss, and their conducting documentary discovery. The Settlement represents a fair, adequate, and reasonable result for the Settlement Class. While Plaintiffs assert that their claims are meritorious, Defendants strongly deny liability, contending that they did not violate the federal securities laws. Accordingly, Defendants' potential defenses and the risks of prosecuting this litigation through class certification, summary judgment, and trial render the

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation, which is being filed concurrently herewith. The Stipulation is attached as Exhibit 1 to the accompanying Declaration of Andrew R. Muehlbauer ("Muehlbauer Decl.").

Settlement in the best interests of the Settlement Class.

The Settlement Amount exceeds the average recovery as a percentage of estimated damages in securities class actions, supporting preliminary approval. Upon this Court's preliminarily approving the Settlement, Plaintiffs will notify Settlement Class Members of the Settlement, mailing to each such member whom the Claims Administrator[2] identifies a Postcard Notice containing instructions on how Settlement Class Members can obtain copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Long Notice") and the Proof of Claim and Release Form (the "Claim Form").

The Long Notice and the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice")[3] that the Claims Administrator will widely disseminate online and in print advise Settlement Class Members of: (i) the essential terms of the Settlement, as memorialized in the Stipulation; (ii) the proposed plan for allocating the Settlement proceeds among Settlement Class Members; (iii) Lead Counsel's application for attorneys' fees of up to one-third and reimbursement of expenses not to exceed $110,000; (iv) the application for an incentive award to Plaintiffs of up to $20,000 in total, or $10,000 each; (v) the procedure for completing and submitting a Claim Form; (vi) the procedure for either objecting to the proposed Settlement or for requesting exclusion from the Settlement Class; and (vi) the date, time, and place of the Settlement Hearing.

For the reasons stated herein, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and schedule a final approval hearing.

---

[2] In addition to the approvals mentioned above, Plaintiffs further request that the Court approve the appointment of Strategic Claims Services ("SCS") as the Claims Administrator. SCS will be responsible for, among other things, disseminating Notice, reviewing claims Settlement Class Members submit, claims administration, and determining which claims to approve and a pro rata distribution of the Net Settlement Fund to Settlement Class Members.

[3] Plaintiffs refer herein to the Long Notice, Summary Notice, and Postcard Notice collectively as the "Notice."

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This is a federal securities class action against Paysign, Newcomer, Attinger and Spence (collectively, with Plaintiffs, the "Parties"). The Consolidated Amended Class Action Complaint for the Violations of the Securities Laws (the "Amended Complaint") (Dkt. No. 22) alleges that Defendants made false and misleading statements to the Company's investors regarding Paysign's internal controls over financial reporting and information technology general controls. [4]

On March 16, 2020, Paysign disclosed that it would be unable to file with the United States Securities and Exchange Commission ("SEC") its Annual Report on Form 10-K for the fiscal year that ended on December 31, 2019 ("2019 10-K"). ¶75. After another delay in filing the 2019 10-K and accompanying stock price declines, ¶¶77-78, on April 3, 2020, Defendants filed the 2019 10-K, disclosing that Paysign's internal controls over financial reporting were ineffective due to material weaknesses. ¶¶79-80. Paysign had retained an employee "barred from practice before the [SEC] who assisted the Company in accounting matters related to the preparation of financial statements for 2017, 2018, and 2019." ¶79. In addition to admittedly hiring an employee barred from practice before the SEC, the Company further admitted to "ineffective oversight of information technology general controls pertaining to user access and the Company's systems change management." ¶80. On these disclosures, on two trading days, the price of Paysign common stock fell from $5.52 on the day before the first disclosure, ¶76, to $4.03 on the day after the last, ¶78, damaging investors.

On March 19, 2020, plaintiff Yilan Shi filed this class action. (Dkt. No. 1). On December 2, 2020, the Court consolidated three cases under the current caption, appointed Plaintiffs as Lead Plaintiffs, and approved Plaintiffs' selection of Pomerantz as Lead Counsel and Muehlbauer Law Office, Ltd. as Liaison Counsel for the class. (Dkt. No. 21). On January 12, 2021, Plaintiffs filed the Amended Complaint (Dkt. No. 22), alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the SEC on behalf of a class of

---

[4] Plaintiffs cite to the pertinent allegations in the Amended Complaint as "¶___" or "¶¶__."

all purchasers of Paysign common stock during the period from March 12, 2019, through March 31, 2020, both dates inclusive.

On March 15, 2021, Defendants moved to dismiss the Amended Complaint (Dkt. No 34). On April 29, 2021, Plaintiffs opposed Defendants' motion to dismiss (Dkt. No. 40). On June 1, 2021, Defendants filed a reply in further support of their motion to dismiss (Dkt. No. 41). On February 9, 2023, the Court granted in part and denied in part Defendants' motion to dismiss, sustaining the Amended Complaint against all Defendants but Spence for whom the Court granted dismissal (Dkt. No. 42). Upon the Court's denial, in part, of Defendants' motion to dismiss, the Parties engaged in substantive discovery, including reviewing and analyzing thousands of documents produced by Defendants and third-parties, prepared responses to Defendants' discovery requests, and prepared to take the depositions of Defendants' employees and third-party individuals. Simultaneously, the Parties engaged in a months-long mediation process that ultimately yielded this Settlement for which Plaintiffs now seek preliminary approval.

## III.    PRELIMINARY APPROVAL IS WARRANTED

### A.    Both Public Policy and Judicial Policy Strongly Favor Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise of claims brought on a class-wide basis. Fed. R. Civ. P. 23(e) ("The Claims . . . of a certified class may be settled . . . only with the court's approval."). In preliminarily approving the Settlement, the Court will principally consider whether: (i) the Settlement, on its face, is fair, reasonable, and adequate; (ii) the Class should be certified for the purposes of the Settlement; (iii) the Notice to potential Settlement Class Members that Plaintiffs propose is adequate; and (iv) the Claims Administrator to transmit Notice to potential Settlement Class Members and to administer the claims process and distribution of the Net Settlement Fund should be appointed. In addition, at this stage, the Court sets deadlines for (a) a final approval hearing, (b) briefing in support of final approval and Plaintiffs' request for attorneys' fees, reimbursement of out-of-pocket expenses, and awards to Plaintiffs for their service to the Settlement Class, (c) requests for exclusion from the

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONSENTED TO MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
2:20-CV-00553-GMN-DJA

Settlement Class, and (d) objections to the Settlement or to Plaintiffs' attorneys' fees request.

In evaluating whether to approve a proposed settlement, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution."). "[T]here is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *13 (N.D. Cal. Nov. 16, 2007) ("public and judicial policies strongly favor settlement of class action law suits"). Approval of class action settlements normally proceeds in two stages: (i) preliminary approval, followed by notice to the class; and (ii) final approval. *See, e.g.*, *West v. Circle K Stores, Inc.*, No. CIVS040438WBSGGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006); *Manual for Complex Litigation, Fourth* §13.14 at 173 (FJC 2004). By this motion, Plaintiffs request that the Court take the first step in the Fed. R. Civ. P. 23(e) approval process, granting preliminary approval of the Settlement.

### B. The Proposed Settlement is Fair, Adequate, and Reasonable

Rule 23(e) does not require "a full settlement fairness appraisal before granting preliminary approval." *Grant v. Cap. Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH BGS, 2013 WL 6499698, at *5 (S.D. Cal. Dec. 11, 2013).[5] Rather, it requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). So long as the Settlement is "potentially fair," this Court should grant preliminary approval, permitting notice to the Settlement Class. *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015) ("a full fairness analysis is unnecessary at this stage"). "At this juncture, preliminary approval of a settlement and notice to the class is appropriate if": (1) "the proposed settlement appears to be the product of

---

[5] Unless otherwise noted, all internal citations and quotation marks are omitted.

5

serious, informed, noncollusive negotiations," (2) "has no obvious deficiencies," (3) "does not improperly grant preferential treatment to class representatives or segments of the class," and (4) "falls within the range of possible approval." *Id*. Since each of these factors weighs in favor of preliminary approval of the Settlement, the Court should, in the exercise of its discretion, *see id.*, preliminarily approve the Settlement. [6]

### 1. The Settlement was the Result of "Serious, Informed, Noncollusive Negotiations"

The Parties' negotiations culminating in the Settlement were "serious," "informed," and at arms-length. In addition to reviewing the publicly available information concerning Paysign, Lead Counsel retained an investigator to conduct a thorough investigation, including interviewing former Paysign employees who agreed to discuss their tenure at Paysign. Through the briefing on Defendants' motion to dismiss, Plaintiffs and Lead Counsel acquired "fulsome understandings" of the Parties' respective positions on the legal and factual issues in the case. *See In re Zynga*, 2015 WL 6471171, at *9. In addition, Defendants produced, and Plaintiffs reviewed thousands of pages of documents concerning Paysign's admitted control deficiency, relating to an employee who worked on the Company's financial statements and whom the SEC had barred from practice.

Beginning in June 2023, the parties engaged in mediation with the assistance of mediator Michelle Yoshida of Phillips ADR. Even as the first day of mediation yielded no meaningful progress toward a resolution over the subsequent months, as document discovery proceeded, Ms. Yoshida's assiduous efforts returned the parties to the mediation process. After painstaking, arms-length negotiations, Ms. Yoshida's efforts yielded the Settlement after the Parties accepted her

---

[6] At the final approval stage, the Court will be asked to review the following factors identified by the Ninth Circuit: "[T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Szymborski v. Ormat Techs, Inc*., No. 3:10-CV-132-RCJ, 2012 WL 4960098, at *2 (D. Nev. Oct. 16, 2012) (citing *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998)).

proposal. On November 1, 2023, the Parties executed a Memorandum of Understanding, and the Stipulation of Settlement followed.

Further, Plaintiffs and Lead Counsel understand the substantial risks involved in prosecuting this Action further. While Plaintiffs believe that the case is strong, achieving class certification and succeeding at summary judgment and trial are in no way assured. Even if Plaintiffs were to clear each of these hurdles, it is likely that Defendants would appeal, injecting uncertainty and delay into the Settlement Class's recovery. The Settlement enables the Settlement Class to recover now.

Plaintiffs had the benefit of the advice of knowledgeable counsel with extensive experience in shareholder class action litigation and securities fraud cases. Courts give considerable weight to the opinion of experienced and informed counsel. *See, e.g.*, *In re Heritage Bond Litig.*, No. 02– ML–1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement."); *Katz v. China Century Dragon Media, Inc.,* No. LACV1102769JAKSSX, 2013 WL 11237202, at *5 (C.D. Cal. Oct. 10, 2013) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *In re NVIDIA Corp. Derivative Litig.*, C-06-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."). Lead Counsel, experienced class action securities fraud practitioners, had a thorough understanding of the merits of the Action, having developed the case from its inception. Due to their experience and knowledge of the merits, Lead Counsel's belief in the fairness and reasonableness of the Settlement warrants a presumption of reasonableness.

Moreover, when parties' arms-length negotiations result in a settlement, courts initially presume that a proposed settlement is fair and reasonable. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). The Parties conducted settlement negotiations here at arms-length with experienced and knowledgeable

7

counsel on both sides through an experienced mediator. The Settlement was only achieved after months of mediation and follow-on communications between the Parties, through the mediator, with each side zealously advocating for their clients and ultimately accepting the mediator's proposal to settle the claims here. This Court should find, therefore, that the Settlement resulted from arms-length negotiations, supporting preliminary approval.

### 2.    The Settlement Does Not Grant Preferential Treatment to Any Settlement Class Member

The Court will also consider "whether the Settlement provides preferential treatment to any class member." *In re Zynga*, 2015 WL 6471171, at *10. "A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every [a]uthorized [c]laimant, but also sensibly makes interclass distinctions based upon, *inter alia,* the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'" *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). "[C]ourts recognize that [a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.*

While the Court need not approve the Plan of Allocation (hereafter the "Plan") until the final approval hearing, it provides sufficient evidence that the Settlement here grants no preferential treatment to any Settlement Class Member. Like the allocation plan in the *Radient Pharms.* settlement, the proposed Plan here uses a Recognized Loss value calculated for each share, with the Recognized Loss value determined by when that share was purchased and sold. The Plan provides for a calculation of the Recognized Loss based on whether Settlement Class Members of Paysign's common stock: (i) sold on or before March 16, 2020,[7] (b) retained at the end of trading on June 29, 2020,[8] or (c) sold between March 16, 2020, and March 31, 2020. *See*

---

[7] The date on which, according to the Amended Complaint, the first corrective disclosure occurred.

[8] The end date of the 90-day look-back period under Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Long Notice, Ex. A-1 to Stipulation. Because the Plan's formula is a *pro rata* allocation, the Court should find that it does not grant preferential treatment to any Settlement Class Member.[9]

### 3. The Settlement Has No "Obvious Deficiencies" and Falls Within the Range for Approval

Moreover, just as the Settlement is the product of arm's-length negotiations and prefers no Settlement Class Member over any other, the Settlement Amount is within the range of reasonable approval. *See West*, 2006 WL 1652598, at *11 (observing that "at this preliminary approval stage, the court need only determine whether the proposed settlement is within the range of possible approval."). Under this Settlement, Defendants will pay $3,750,000, representing almost 10% of the roughly $37.7 million of Plaintiffs' estimated aggregate damages.

As a percentage of the total of Plaintiffs' estimated damages, the Settlement Amount is well above the amount of a typical securities class action settlement. *See, e.g., In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (noting that settlement of over 9% of damages was three times the average percentage of securities class action settlements);[10] *See also* Janeen McIntosh, Svetlana Starykh, and Edwards Flores, *Recent Trends in Securities Class Action*

---

[9] Nor does the proposed $20,000 award in total, or $10,000 each, for the named class representatives provide any basis to conclude that the Settlement grants preferential treatment to any member of the Settlement Class. Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Radient Pharms.*, 2014 WL 1802293, at *11. The proposed awards to Plaintiffs are consistent with amounts awarded by other courts in this Circuit. *See, e.g., In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (approving $5,000 incentive award); *In re Galena Biopharma, Inc. Sec. Litig.*, No. 314CV00367SILEAD, 2016 WL 3457165, at *12 (D. Or. June 24, 2016) (approving $5,000 incentive award to each lead plaintiff); *In re LDK Solar Sec. Litig.,* No. C 07-5182 WHA, 2010 WL 3001384, at *5 (N.D. Cal. July 29, 2010) ($10,000 incentive award). Accordingly, the award to Plaintiffs will not upset the Court's determination that no Settlement Class Member receives preferential treatment under the terms of the Settlement.

[10] *See also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case.").

*Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023 at pp. 17-18)[11], Figs. 18 & 19 (median recovery in securities class actions from 2013 to 2022 ranged from 1.5% to 2.5%; for cases with losses in the range of $20 million to $49 million, the median recovery from 2011 to 2022 was 5.2%.

Further, when evaluating the Settlement by examining recovery per damaged share as outlined in the Long Notice, the estimated average recovery is $0.12 per Plaintiffs' estimate of damaged shares of Paysign common stock. This is a reasonable result. *See, e.g., Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (per damaged share recovery of $0.11 "falls squarely within the settlement amounts approved in other securities class action cases."). Accordingly, this Court should conclude that the Settlement Amount weighs in favor of granting preliminary approval.

## IV.   THIS COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Parties have stipulated to certification of a class for settlement purposes only. (Stipulation ¶43). Accordingly, the Court should determine whether to certify the proposed class pursuant to Rule 23(a) and (b). The Settlement Class easily meets the requirements of Rule 23(a)(1)-(4) and Rule 23(b)(3).

### A.   The Settlement Class Satisfies Rules 23(a)(1)-(4)'s Requirements

Rule 23(a) establishes four prerequisites for class action litigation, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *see also Staton*, 327 F.3d at 953, 957. The Settlement Class meets each of these requirements.

**Numerosity:** The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *In re*

---

[11] Available at https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf

*China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at *2 (C.D. Cal. May 16, 2013). "As a general rule, classes of forty or more are considered sufficiently numerous." *Id.* Where it is "obvious" that the number of class members far exceeds forty, this requirement is met. And where, as in this case involving "nationally traded stocks," "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012); *Howell v. JBI, Inc*., 298 F.R.D. 649, 654 (D. Nev. 2014) ("in securities cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied"). The Court should make a similar finding here.[12]

**Commonality:** To certify a class, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This case concerns a number of common questions of fact and law, including: (1) whether Defendants made statements to the investing public during the Settlement Class Period that omitted or misrepresented material facts about Paysign's internal controls over financial reporting – specifically deploying a person the SEC had barred from practice to assist Paysign in compiling its financial statements; (2) whether Defendants acted willfully, knowingly, or with deliberate recklessness in making these omissions or misrepresentations; (3) whether Defendants' omissions or misrepresentations constituted fraud on the market, artificially inflating the market price of Paysign common stock during the Settlement Class Period; and (4) whether the Settlement Class Members have sustained damages caused by Defendants' statements. The commonality requirement is satisfied since even though the amount each class member is entitled will differ, the issues described above are common to the Settlement Class. *In re Zynga*, 2015 WL 6471171, at *6; *Juniper*, 264 F.R.D. at 588 ("Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2).").

---

[12] *See also, e.g.*, *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks.").

**Typicality:** Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although there may be differences in damages calculations depending on when Plaintiffs and the other Settlement Class Members purchased their Paysign common stock, the injury is common to the Settlement Class. There is no indication that Plaintiffs would face any unique defenses that could make their claims atypical of the Settlement Class. Rule 23(a)(3) does not require Plaintiffs to show that their claims are identical on every issue to those of the Class, but merely that significant common questions exist. *See In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005). Given that Plaintiffs' claims are typical of the Settlement Class, the Court should find that the typicality requirement has been met. *See In re Zynga*, 2015 WL 6471171, at *7.

**Adequacy:** Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs purchased Paysign common stock on the market during the Settlement Class Period and were injured by suffering losses in the same manner as the rest of the Class. Thus, Plaintiffs possess the same interest and suffered the same injury as the rest of the Settlement Class, supporting their adequacy. *See In re Zynga*, 2015 WL 6471171, at *7. There is no indication here that Plaintiffs' interests will conflict with those of the Settlement Class. Plaintiffs, therefore, are adequate representatives of the Settlement Class.

As to the adequacy of Plaintiffs' counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Lead Counsel has been involved in this action from the beginning with a pre-filing investigation of securities claims against Defendants. Lead Counsel also retained an investigator to assist with developing Plaintiffs' claims in the Amended Complaint in addition to Lead Counsel's review of publicly available information. Lead Counsel also retained a damages expert

12

to evaluate the case. These expenses and efforts were undertaken on a contingency fee basis, with no guarantee of recovery. Lead Counsel are experienced securities class action attorneys (*See* Pomerantz Firm Resume, Dkt. No. 8-7) who are knowledgeable and capable of evaluating cases to determine whether a settlement, and at what stage of the litigation, would be beneficial to the class, and when to continue pursuing litigation of an action. Based on Lead Counsel's experience, and their work in the matter thus far, the Court should conclude that Lead Counsel has satisfied the adequacy requirements under Rule 23(g). *See China Medicine,* 2013 WL 12126754, at *4. Thus, the adequacy requirement is satisfied.

### B.   The Settlement Class Meets Rule 23(b)(3) Requirements

In addition to satisfying the elements of Rule 23(a), as discussed above, Plaintiffs must also satisfy one of the three elements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), alleging that common questions predominate over any individual issues that may exist in this case. Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3) (emphasis added). This Action meets both requirements.

The Ninth Circuit is clear that the "criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). When deciding whether to certify a settlement class, the Court's concern is the class definition. *Id.* at 556-57. Because there will be no trial, manageability at trial is not an issue. In this case, as in many securities cases, the Settlement Class definition is straightforward, and this Court should find that the Settlement Class satisfies Rule 23(b)(3)'s prescription.

**Predominance:** "Rule 23(b)(3) first requires predominance of common questions over individual ones, such that the adjudication of common issues will help achieve judicial economy." *In re Zynga*, 2015 WL 6471171, at *7. No individual question predominates surrounding Defendants' alleged conduct. Allegations arising under the federal securities laws

13

support a finding of predominance as they arise out of common questions and issues. *Howell*, 298 F.R.D. at 656 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages."); *China Medicine*, 2013 WL 12126754, at *5 ("Plaintiff's claims under federal securities laws entail nothing but common questions and issues for the class."); *In re Zynga*, 2015 WL 6471171, at *7 (for securities action, the "same set of operative facts and a single proximate cause applies to each proposed class member."). Whether Defendants' statements were materially false, whether Defendants acted with requisite scienter, and whether Defendants' conduct caused damages to Plaintiffs and the Settlement Class Members, are common to the Settlement Class.

That Settlement Class Members hold different amounts of Paysign common stock does not defeat a finding of predominance. In determining whether common questions predominate, the primary inquiry is on the issue of liability, not the calculation of damages. *See Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 684 (D. Nev. 2008) (holding that "the potential need to determine individual damages does not defeat the economy that would be achieved by certifying the case as a class action, at least as to the issue of liability."). While the amount of damages may differ among members of the Settlement Class, liability and the proper measure of damages can be determined on a class-wide basis. *See In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("[T]he critical questions of what Defendants said, what they knew, what they may have withheld, and with what intent they acted, are central to all class members' claims ... Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy."). This Action, therefore, meets the predominance requirement.

**Superiority:** Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Plaintiffs' and the Settlement Class Members' claims. For certification of a settlement class, as Plaintiffs seek here, the Court is not required to analyze each superiority factor in great detail. The Supreme Court held that a court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *See*

14

*Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 620, (1997). Rather, more consideration is required to evaluate the class definition to ensure that it is not "unwarranted or overbroad." *Id.* The Ninth Circuit has followed suit recognizing that "[t]he criteria for class certification are applied differently in litigation classes and settlement classes" and that certification of settlement-only classes require "heightened attention to the definition of the class." *Hyundai.*, 926 F.3d at 556-57. A class definition is approvable "if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Although the Court must evaluate the class definition, for securities class actions settlements, however, there are rarely any definitional issues as proposed classes for these types of actions are definite and ascertainable. *See Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015) ("class definition contained in the Settlement Agreement satisfies the ascertainability requirement, as the class consists of individuals who purchased [company] stock within a discrete time period."). Here, the proposed class is clearly defined as Paysign investors who purchased publicly traded common stock during a finite period. Thus, the class definition is proper for certification at settlement.

The remaining superiority factors support class action treatment of this securities action as it would be economically and judicially efficient having similar actions heard in one court. Further, a class action avoids the duplication of efforts and inconsistent rulings. *See In re Zynga*, 2015 WL 6471171, at *7 (if shareholders "each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendants' liability. Different courts could interpret the claims different, resulting in inconsistent rulings or unfair results."); *Howell*, 298 F.R.D. at 656 (finding a class action "avoids the dangers of duplicative litigation and the unfairness of inconsistent judgments" and that "securities fraud cases fit Rule 23 like a glove"); *China Medicine*, 2013 WL 12126754, at *5 ("where the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action."). Thus, this action satisfies the superiority requirement

by avoiding the possibility of repetitious, expensive litigation and efficiently resolving the claims of the entire Settlement Class at once.

Because this action meets the Rule 23(a) and (b)(3) requirements, the Court should certify the Settlement Class for purposes of this Settlement.

## V.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]"). Courts evaluating proposed notice documents have held that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).[13]

The content of the proposed Notice package is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The proposed method of notice described above, specifically mailing and publication, also satisfies the requirements of Fed. R. Civ. P. 23, the PSLRA, and due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see, e.g., In re Celera Corp. Sec. Litig.,* No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *7 (N.D. Cal. Mar. 31, 2015*)* (granting preliminary approval of class action settlement and form and content of notice package, including postcard notice as conforming to Rule 23, PSRLA, and due process); *In re Portal Software, Inc. Sec. Litig.,* 2007 WL 1991529, at *7 (similar). The Notice package Plaintiffs propose, therefore, suffices under

---

[13] *See also Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *11 (C.D. Cal. June 15, 2010) ("The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment").

16

Rule 23, the PSLRA, and due process.

Here, the [Proposed] Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order" or the "Order"), attached as Exhibit A to the Stipulation, mandates that as soon as practical after receiving lists of beneficial owners from nominees and custodians,[14] the third-party Claims Administrator, shall mail the Postcard Notice, attached to the Preliminary Approval Order as Exhibit A-4, to all identifiable Settlement Class Members identified by records maintained by Paysign or its transfer agent, or identified by banks, brokerage firms, or other nominees, as having purchased Paysign common stock during the Settlement Class Period. The Postcard Notice prompts potential Settlement Class Members to view the Long Notice online or to contact the Claims Administrator to request a hard copy of the Long Notice and Claim Form. The Claims Administrator will cause the Stipulation, the Preliminary Approval Order, Claim Form, and a copy of the Long Notice to be posted on the Claims Administrator's website within sixteen (16) calendar days after entry of the Preliminary Approval Order. Additionally, no later than sixteen (16) calendar days after the entry of the Preliminary Approval Order, the Claims Administrator shall cause the Summary Notice, substantially in the form annexed as Exhibit A-3 to the Preliminary Approval Order, to be published electronically over the internet, *e.g.*, by *GlobalNewswire, PR Newswire*.

The proposed Notice provides detailed information, in plain English, concerning: (a) the rights of Settlement Class Members, including the manner in which objections may be lodged and exclusions may be requested; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a Claim Form; (e) a description of the proposed Plan; (f) the fees and expenses to be sought by Lead Counsel, and (g) the reimbursement awards requested by Plaintiffs.

The proposed Notice includes all of the information the PSLRA, Rule 23, and due process

---

[14] The Preliminary Approval Order requires the Claims Administrator, within sixteen (16) calendar days after entry of the Preliminary Approval Order, to mail Postcard Notice to Settlement Class Members who can be reasonably identified.

require. The proposed Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the Court-certified Settlement Class and who is excluded; (3) the reasons the Parties have proposed the Settlement; (4) the amount of the Settlement Fund; (5) the estimated average distribution per damaged share; (6) the Settlement Class's claims and issues; (7) the Parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; (9) the maximum amount Lead Counsel will request for reimbursement of costs and expenses; (10) the Plan for allocating the Settlement proceeds to the Settlement Class; and (11) the date, time and place of the final Settlement Hearing. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

Further, the proposed Notice discusses the rights Settlement Class Members have in connection with the Settlement, including: (1) the right to request exclusion from the Settlement Class and the manner for submitting a request for exclusion; (2) the right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) the right to participate in the Settlement and instructions on how to complete and submit a Claim Form to the Claims Administrator. The Notice also provides contact information for Lead Counsel and counsel for Defendants, as well as the postal address for the Court.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Summary Notice satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees in an amount not to exceed one-third of the total Settlement and for reimbursement of reasonable litigation expenses not to exceed $110,000 to be paid from the Settlement Fund. The Notice also notes the application for an incentive award of no more than $20,000 in total to Plaintiffs for the time they spent consulting with Lead Counsel throughout the litigation to date.

In sum, the Notice program proposed in connection with the Settlement and the form and content of the Notice more than satisfy all applicable requirements of both the Federal Rules of

18

Civil Procedure and the PSLRA. Accordingly, in granting preliminary approval of the Settlement, Class Representatives respectfully request that the Court also approve the proposed form and method of giving notice to the Class.

## VI.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose the following procedural schedule:

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing. | Plaintiffs suggest no fewer than one hundred (100) days after entry of the Preliminary Approval Order. (Order ¶6). |
| Mailing of the Postcard Notice. | No later than sixteen (16) calendar days following entry of the Preliminary Approval Order. (Order ¶11). |
| Publication of the Stipulation and its Exhibits, the Preliminary Approval Order, the Long Notice and the Claim Form, and on the Claims Administrator's website. | No later than sixteen (16) calendar days following entry of the Preliminary Approval Order. (Order ¶16). |
| Publication of the Summary Notice. | No later than sixteen (16) calendar days following entry of the Preliminary Approval Order. (Order ¶17). |
| Date for Plaintiffs to file papers in support of final approval of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses. | No later than thirty-five (35) calendar days prior to the Settlement Hearing. (Order ¶28). |
| Filing deadline for requests for exclusion. | No later than twenty-eight (28) calendar days prior to the Settlement Hearing. (Order ¶21). |
| Filing deadline for objections. | No later than twenty-eight (28) calendar days prior to the Settlement Hearing. (Order ¶25). |
| Filing deadline for Claim Forms. | No later than forty-four (44) calendar days prior to the Settlement Hearing (Order ¶19(a)) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation, and for application for attorneys' fees and reimbursement of expenses. | No later than seven (7) calendar days prior to the Settlement Hearing. (Order ¶29) |

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order

19

substantially in the form of the proposed Preliminary Approval Order: (a) preliminarily certifying the Settlement Class; (b) preliminarily approving the Settlement; (c) holding that the manner and forms of notice set forth in the Preliminary Approval Order satisfy due process and provide the best notice practicable under the circumstances; (d) setting a date for the Settlement Hearing; (e) appointing Plaintiffs as Class Representatives and Lead Counsel as Class Counsel; (f) appointing SCS as the Claims Administrator; (g) ordering that Notice substantially in the forms of the proposed notices be given to the proposed Settlement Class; and (h) granting such other and further relief as may be required.

Dated: December 15, 2023

Respectfully submitted,

**POMERANTZ LLP**

By: /s/ *Omar Jafri*

Joshua B. Silverman (*pro hac vice*)
Omar Jafri (*pro hac vice*)
Genc Arifi (*pro hac vice*)
10 S. LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: jbsilverman@pomlaw.com
          ojafri@pomlaw.com
          garifi@pomlaw.com

*Lead Counsel for Plaintiffs*

**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer
Nevada Bar No. 10161
Sean P. Connell
Nevada Bar No. 7311
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
Email: andrew@mlolegal.com
          sean@mlolegal.com

*Liaison Counsel for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2023, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONSENTED TO MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Andrew R. Muehlbauer*
Andrew R. Muehlbauer