ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330.4505
Facsimile: (702) 825.0141
Email: andrew@mlolegal.com

*Liaison Counsel for Lead Plaintiffs*

**POMERANTZ LLP**
Omar Jafri
(admitted *pro hac vice*)
Genc Arifi
(admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:    ojafri@pomlaw.com
          garifi@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE PAYSIGN, INC. SECURITIES LITIGATION | Case No: 2:20-CV-00553-GMN-DJ<br><br>HON. GLORIA M. NAVARRO<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS** |

**NOTICE OF PLAINTIFFS' UNOPPOSED  MOTION FOR
AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF
LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS AND
<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT</u>**

Lead Plaintiffs Johann Francisconi and Raheel Shahzad (collectively, the "Plaintiffs"), on behalf of themselves and all members of the proposed Settlement Class, hereby respectfully move this Court for an Order: (1) awarding attorneys' fees in the amount of 33 and 1/3% of the Settlement Fund, in cash; (2) approving reimbursement of $57,471.31 in aggregate expenses; and (3) granting an award to Plaintiffs in the amount of $10,000 each.

This motion is based on the following memorandum of points and authorities and accompanying declaration of Omar Jafri and the exhibits attached thereto, including the Court's file in this Action, and any additional evidence or argument that the Court may request.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ iii

I.    PRELIMINARY STATEMENT ........................................................................1

II.   ARGUMENT .......................................................................................................2

    A.  This Court Should Approve Lead Counsel's Request for Attorneys' Fees of One-Third of the Common Fund ........................................................2

        1.  The Common Fund Doctrine Entitles Plaintiffs' Counsel to an Award of Attorneys' Fees ........................................................2

        2.  The Court Should Apply the Percentage-of-Recovery Method...............3

        3.  Attorneys' Fees of a Third of the Settlement Fund is Reasonable ..........3

        4.  Evaluation of the Ninth Circuit's Factors for Awarding Attorneys' Fees in Common Fund Cases Supports a 33.3% Fee in this Case ..................4

            a)  The Result Plaintiffs' Counsel Achieved Supports a 33.3% Fee.....4

            b)  The Risks of Litigation .................................................................6

            c)  Experienced and Skilled Plaintiffs' Counsel Performed Quality Work to Reach the Settlement .......................................................7

            d)  The Contingent Nature of the Fee and the Financial Burden Plaintiffs' Counsel Carried ...........................................................8

            e)  The Reaction of the Settlement Class Supports the Requested Fee...............................................................................................10

            f)  The Lodestar Cross-Check Supports the Requested Fee ...............11

    B.  The Court Should Approve Reimbursement from the Settlement Fund of Plaintiffs' Counsel's Out-of-Pocket Expenses......................................13

    C.  The Court Should Approve an Award to Plaintiffs for Their Reasonable Costs and Expenses Related to Their Service to the Class....................................14

i

1

III.    CONCLUSION ............................................................................................................... 15

CERTIFICATE OF SERVICE ................................................................................................ 17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
 77 F.3d 1215 (10th Cir. 1996) ..................................................................9

*ATLAS v. Accredited Home Lenders Holding Co.*,
 No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)..............................6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
 472 U.S. 299 (1985)........................................................................9

*Blum v. Stenson*,
 465 U.S. 886 (1984)........................................................................3

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980)......................................................................2, 3

*Buccellato v. AT & T Operations, Inc.*,
 No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011)....................................12

*Cheng Jiangchen v. Rentech, Inc.*,
 No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................5

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
 19 F.3d 1306 (9th Cir. 1994) ..................................................................3

*Craft v. Cnty. of San Bernardino*,
 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ......................................................4, 5

*Dyer v. Wells Fargo Bank, N.A.*,
 303 F.R.D. 326, 336 (N.D. Cal. 2014) ..........................................................14

*Ellison v. Steven Madden, Ltd.*,
 No. CV115935PSGAGRX, 2013 WL 12124432 (C.D. Cal. May 7, 2013) ............................3

*Harris v. Marhoefer*,
 24 F.3d 16 (9th Cir. 1994) ..................................................................13

*Hashem v. NMC Health PLC*,
 No. 2:20-cv-02303-CBM-MAA, 2022 WL 3573145 (C.D. Cal. Apr. 8, 2022)..................2, 4

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983)........................................................................4

*Hopkins v. Stryker Sales Corp.*,
  No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013)....................................12

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................7

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
  109 F.3d 602 (9th Cir. 1997) ...............................................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................7

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .........................................................................................14

*In re Heritage Bond Litig.*,
  No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) .........................7

*In re Ikon Office Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).............................................................................................7

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007).............................................................................11, 14

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................................5

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................ *passim*

*In re Oracle Corp. Sec. Litig.*,
  No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009)..........................................9

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ...........................................................................................4, 5, 6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ...........................................................................................3, 12

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA'" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005)................................................................................9, 14

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)..................4, 5

*Jenson, v. First Tr. Corp.*,
  No. CV 05-3124 ABC (CTX), 2008 WL 11338161 (C.D. Cal. June 9, 2008).......................14

*Katz v. China Century Dragon Media, Inc.*,
No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) .................3, 13

*Linney v. Cellular Alaska P'ship*,
No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997)........................................14

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ..........................................................................................14

*Luna v. Marvell Tech. Grp.*,
No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018)................................13

*McPhail v. First Command Fin. Planning, Inc.*,
No. 05CV179-IEGJMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009)...............................5, 6

*Missouri v. Jenkins by Agyei*,
491 U.S. 274 (1989)............................................................................................................12

*Redwen v. Sino Clean Energy, Inc.*,
No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) ...........................7

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...........................................................................................9

*Rodman v. Safeway Inc.*,
No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018)..................................4

*Romero v. Producers Dairy Foods, Inc.*,
No. 1:05cv0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ....................................5

*Rutti v. Lojack Corp.*,
No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ......................12

*Steiner v. Am. Broad. Co.*,
248 F. App'x 780 (9th Cir. 2007) ...................................................................................11, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..............................................................................................................9

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .......................................................................................5

*Vincent v. Hughes Air West, Inc.*,
557 F.2d 759 (9th Cir. 1977) ................................................................................................3

*Vincent v. Reser*,
No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ............................2, 3, 13

v

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................ *passim*

*Waldbuesser v. Northrop Grumman Corp.*,
    Case No. CV 06-6213-AB (JCx), 2017 WL 9614818 (C.D. Cal. Oct. 24, 2027) ...................4

*Ward v. Succession of Freeman*,
    854 F.2d 780 (5th Cir. 1988) ..................................................................9

**Statutes & Regulations**

Private Securities Litigation Reform Act of 1995 ...............................................3, 7, 14

15 U.S.C. §78u-4(a)(4) ...........................................................................14

15 U.S.C. §78u-4(a)(6) ............................................................................3

**Additional Authorities**

Newberg and Conte, *Newberg on Class Actions* (4th ed. 2007) ..................................5

Janeen McIntosh, Svetlana Starykh, and Edwards Flores, *Recent Trends in Securities Class
    Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023)
    https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trend
    s.pdf...........................................................................................5

Richard Posner, *Economic Analysis of Law* (3d ed. 1986) ..........................................11

Lead Plaintiffs Johann Francisconi and Raheel Shahzad (collectively, "Plaintiffs")[1] hereby submit this memorandum of law in support of their application for: (i) an award of $1,249,999.99, or 33 and 1/3% of the Settlement Fund, in cash as attorneys' fees; (ii) reimbursement of expenses incurred by counsel in successfully prosecuting and resolving this litigation in the amount of $57,471.31; and (iii) reimbursement awards in the amount of $10,000 for each of the Plaintiffs.

## I.     PRELIMINARY STATEMENT

As detailed in the Stipulation, Defendants have agreed to pay or cause to be paid $3,750,000 to settle the claims Plaintiffs allege in this Action. Given the relevant circumstances – most notably the Action's complicated nature and the risks of pursuing the Action through summary judgment, trial, and any appeals – this recovery is a favorable result for the Settlement Class. Through the efforts of their counsel, Plaintiffs achieved the Settlement through thorough investigation, prevailing on a motion to dismiss the Amended Complaint, engaging in discovery, and successfully participating in arms-length settlement negotiations.

Plaintiffs' Counsel[2] has not received any compensation or reimbursement of out-of-pocket expenses for their prosecution of this Action. Lead Counsel respectfully requests to be awarded attorneys' fee of a third of the Settlement Fund, including any accrued interest, and that they be reimbursed out of the Settlement Fund for out-of-pocket litigation expenses in the amount of $57,471.31 plus any accrued interest. Attorneys' fees in the amount of one-third of the Settlement Fund is justified because of the above-average recovery of the Class's estimated damages, the contingent nature of the representation, the complexity of the case, the risks of

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement, filed on December 15, 2023 (the "Stipulation") (ECF No. 63-2).

[2] "Plaintiffs' Counsel" means Lead Counsel Pomerantz LLP ("Pomerantz") together with the Rosen Law Firm, P.A. ("Rosen"), and Liaison Counsel Muehlbauer Law Office, Ltd. ("Muehlbauer"), both of which worked under the direction of Lead Counsel, and provided substantial assistance to Lead Counsel throughout the litigation.

continued litigation, and the lack of any objections from the Class to the requested fee award. *See, e.g.*, *Hashem v. NMC Health PLC*, No. 2:20-cv-02303-CBM-MAA, 2022 WL 3573145, at *2 (C.D. Cal. Apr. 8, 2022) (collecting cases). In addition, the expenses Plaintiffs' Counsel incurred in connection with the prosecution of the Action were both reasonable and necessary to prosecute, and substantially below the maximum amount approved by this Court in its Preliminary Approval Order. Plaintiffs approved Plaintiffs' Counsel's request for fees and expenses. *See* Declaration of Johann Francisconi ("Francisconi Decl.") and Declaration of Raheel Shahzad ("Shahzad Decl.") attached as Exhibits 5 and 6 to the Jafri Declaration.[3]

Finally, Plaintiffs seek reimbursement awards for the time they spent carrying out their obligations on behalf of the Class. The requested award of $10,000 for each Plaintiff, is in line with similar awards granted in other matters for the effort Plaintiffs expended for Settlement Class Members.

Accordingly, Plaintiffs respectfully submit that the requested fees, expenses, and reimbursement to Plaintiffs should be granted.

## II.    ARGUMENT

### A.    This Court Should Approve Lead Counsel's Request for Attorneys' Fees of One-Third of the Common Fund

#### 1.    The Common Fund Doctrine Entitles Plaintiffs' Counsel to an Award of Attorneys' Fees

Under the "common fund" doctrine, attorneys who achieve a benefit for a class are entitled to a reasonable fee as compensation for their services. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (establishing a common fund for persons other than the lawyer who establishes it entitles lawyer to reasonable attorneys' fees from the fund); *see also Vincent v. Reser*,

---

[3] The Declaration of Omar Jafri in Support of Plaintiffs': (1) Consented Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation, and (2) Unopposed Motion For Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Plaintiffs ("Jafri Declaration" or "Jafri Decl.") contains a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by the Settlement Class in pursuing litigation, the negotiations that led to the Settlement, and a description of the services provided by Lead Counsel.

No. C 11-03572 CRB, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). The Ninth Circuit has also held that creating, increasing, or preserving a common fund entitles a lawyer to "the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund doctrine prevents unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part by Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

### 2.    The Court Should Apply the Percentage-of-Recovery Method

Even as district courts have the discretion in common fund cases to utilize either the percentage-of-the-fund or the lodestar method, *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), courts typically use the percentage-of-recovery method. *See Blum v. Stenson*, 465 U.S. 886, 900, n. 16 (1984) (percentage-of-recovery approach is appropriate for determining attorneys' fees in common fund cases); *Ellison v. Steven Madden, Ltd.*, No. CV115935PSGAGRX, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases."). Courts apply the percentage-of-recovery approach, preferring it over the lodestar/multiplier approach because "it aligns the lawyers' interests with those of the class [and] also simplifies the approval analysis." *Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *7 (C.D. Cal. Oct. 10, 2013). Further, the plain text of the Private Securities Litigation Reform Act of 1995 ("PSLRA") recognizes that the percentage-of-recovery is the preferable approach to awarding fees. *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). Thus, the Court should use the percentage-of-recovery method to compensate Plaintiffs' Counsel.

### 3.    Attorneys' Fees of a Third of the Settlement Fund is Reasonable

Recognizing the utility of the percentage-of-recovery method, the Ninth Circuit has stated

3

that "[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (emphasis added); *see also Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *4 (D. Nev. Oct. 19, 2012) ("Twenty-five percent should be the 'bench mark' percentage, but the district court may adjust upward or downward to account for the circumstances in each case.") (citation omitted). Courts in this Circuit have consistently found, however, that upward departures from the 25% benchmark are appropriate where, like here, counsel's efforts result in an above-average recovery for the Class, the case is complex and litigated on a contingent basis, the risks of continued litigation favor settlement, and there are minimal or no objections from the Class to the requested fee award. *See*, *e.g.*, *Hashem*, 2022 WL 3573145, at *2. Factors that typically inform whether an upward adjustment is justified include: (1) the result obtained for the class; (2) the complexity of the issues; (3) the effort expended by counsel and counsel's experience and skills; (4) the risks of non-payment assumed by counsel; (5) the reaction of the class; and (6) a comparison with counsel's lodestar. *Waldbuesser v. Northrop Grumman Corp.*, Case No. CV 06-6213-AB (JCx), 2017 WL 9614818, at *2 (C.D. Cal. Oct. 24, 2027). All of these factors justify the requested fee award in this Action.

### 4. Evaluation of the Ninth Circuit's Factors for Awarding Attorneys' Fees in Common Fund Cases Supports a 33.3% Fee in this Case

#### a) The Result Plaintiffs' Counsel Achieved Supports a 33.3% Fee

Courts consistently recognize that the result achieved is an important factor to consider in evaluating a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting the "most critical factor is the degree of success obtained"); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 23, 2018); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Plaintiffs submit that the $3.75 million Settlement is a favorable result for the Settlement Class, both quantitatively and when considering the risk of a lesser, or no, recovery if the case proceeded through class certification, summary judgment, and trial.

"[C]ourts frequently take into account the size of the fund" secured on behalf of the class when "awarding percentages of the class fund." *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d

1113, 1127 (C.D. Cal. 2008) (noting class fund of less than "$10 Million will often result in [sic] fees above 25%"); *see also Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 297 (N.D. Cal. 1995) (examining cases and noting that attorneys' fees ranging from 30-50% of the common fund were proper when the fund was less than $10 million). Here, the $3.75 million Settlement Amount is well within the accepted range of recovery for attorneys' fees of 33.3% awarded in this Circuit. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000) (affirming 33% attorneys' fee award of a $1.725 million settlement); *Pac. Enters.*, 47 F.3d at 379 (affirming 33% attorneys' fee award where settlement fund was $12 million); *Cheng Jiangchen v. Rentech, Inc*., No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) (approving a fee award of 33% of a $2.05 settlement); *Romero v. Producers Dairy Foods, Inc*., No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33%, and observing that "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery,'") (quoting Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007)).

The Settlement also is well above the average recovery in securities class actions because it represents nearly 10% of the maximum estimated damages of $37.7 million that the Settlement Class could recover. As reported by NERA, the median recovery in securities class actions from 2013 to 2022 ranged from 1.5% to 2.5%; for cases with losses in the range of $20 million to $49 million, the median recovery from 2011 to 2022 was 5.2%. *See* Janeen McIntosh, Svetlana Starykh, and Edwards Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023, at pp. 17-18), Figs. 18 & 19.[4] The percentage of recovery in this case also exceeds recoveries in numerous court-approved securities class actions in this Circuit. *See, e.g.*, *Bhd. of Elect. Workers*, 2012 WL 5199742, at *3 (approving settlement recovering about 3.5% of the maximum damages that plaintiffs believe could be recovered at trial, and noting that the amount is within the median recovery in securities class actions settled in the previous few

---

[4] https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf

years); *McPhail v. First Command Fin. Planning, Inc.*, No. 05CV179-IEGJMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (settlement recovering 7% of estimated damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at 1042 (settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"). The Settlement Amount thus supports an award of attorneys' fees equal to 33.3% of the Settlement Fund.

**b)**      **The Risks of Litigation**

The risk of further litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *Pac. Enters.*, 47 F.3d at 379 (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also ATLAS v. Accredited Home Lenders Holding Co*., No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) (approving settlement where "litigating the complex securities fraud class action to completion would have resulted in substantial delay and expense"). As Plaintiffs describe, substantial risks and uncertainties in the Action required the skill and focus of Lead Counsel to bring this matter to a favorable resolution. Jafri Decl., at ¶¶23-27. Although the Amended Complaint partly survived Defendants' motion to dismiss, risks existed that Plaintiffs could fail to establish liability. In addition, there was a significant risk that Plaintiffs would not be able to recover the full amount of damages or any damages at all because of Defendants' limited resources, and the significant expense of continued litigation.

If the litigation continued, Plaintiffs would have had to successfully move for class certification, which Defendants would surely have opposed. Plaintiffs then faced challenges in proving that Defendants' alleged misstatements regarding the role of an accountant banned by the SEC in preparing Paysign's financial statements were material and made with scienter. Defendants contested that it was improper to retain the accountant despite the ban, as well as the Individual Defendants' scienter, contending that they actually made reasonable judgments. Marshalling facts to counter this position at summary judgment and trial would have required nuanced evidence

6

regarding the accountant's role and the Individual Defendants' state of mind.

Accordingly, Plaintiffs faced the possibility that the Court could grant Defendants' anticipated motion for summary judgment. Then, if the case survived, regardless of who would ultimately be successful at trial, both sides would have had to present complex and nuanced information to a jury with no certainty as to the outcome. *See In re Omnivision*, 559 F. Supp. 2d at 1047 (noting that the risks of litigation, including the ability to prove the elements of a securities fraud claim and damages subject to a battle of the experts, support the requested fee).[5] Even a successful verdict at trial would have had to survive appeals.

But for the resolution, Plaintiffs and the Settlement Class faced the risk of years of litigation with no guarantee of a greater recovery. Lead Counsel achieved a positive result for the Settlement Class in the face of many risks. Under these circumstances, the result in the case, too, supports awarding the requested attorneys' fees.

> ### c)    Experienced and Skilled Plaintiffs' Counsel Performed Quality Work to Reach the Settlement

Courts recognize that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) (citation omitted); *see also Vizcaino*, 290 F.3d at 1048. Courts also have acknowledged the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

Here, Plaintiffs' Counsel (i) conducted an extensive factual investigation, which included

---

[5] While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially because of the burdens imposed on plaintiffs by the statute. *See Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'") (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010)); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

reviewing Defendants' SEC filings and other public documents, interviewing former employees of the Company, and developing leads from the investigation; (ii) researched, drafted and filed the operative Amended Class; (iii) successfully opposed Defendants' motion to dismiss; (iv) reviewed and analyzed thousands of documents produced by Defendants and third-parties; (v) prepared responses to Defendants' discovery requests; (vi) prepared to take the depositions of Defendants' employees and third-party individuals; and (vii) participated in a month's long, arms'-length mediation process that ultimately yielded this Settlement based on a mediator's proposal accepted by both parties.

Plaintiffs' Counsel are experienced securities class action litigators.[6] As described with more detail in the firm resumes, courts around the country have recognized Plaintiffs' Counsel's experience and competence. The favorable Settlement is attributable in substantial part to Plaintiffs' Counsel's diligence, determination, hard work, and skill as they developed, litigated, and successfully negotiated the Settlement. This factor supports a fee award in the amount of one-third of the Settlement Fund.

### d)   The Contingent Nature of the Fee and the Financial Burden Plaintiffs' Counsel Carried

Plaintiffs' Counsel undertook this Action on an entirely contingent basis, taking the risk that the litigation would yield no or minimal recovery and leaving Plaintiffs' Counsel uncompensated for the time devoted to the litigation over several years as well as out-of-pocket expenses shouldered entirely by Plaintiffs' Counsel. Courts across the country recognize that the risk of receiving little or no recovery is a material factor in determining an award of attorneys' fees. *See Vizcaino*, 290 F.3d at 1048–50; *Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."). The Supreme Court has

---

[6] *See* Pomerantz's firm resume at ECF No. 8-7, Rosen's firm resume attached as Exhibit A to the Declaration of Jacob A. Goldberg Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl."), and Muehlbauer's firm resume at ECF No. 8-8.

8

emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the Supreme Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).[7]

Indeed, in many securities class actions, plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended considerable resources, yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million). Often, because of discovery of previously unknown facts, changes in the law during the pendency of the case, or a judge's or jury's decision following a trial on the merits, contingency litigation yields no fee for counsel. *See, e.g.*, *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). As the court in *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994. Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on

---

[7] Additionally, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the risks undertaken with a clear view of the economics of a securities class action.

1    appeal or on a post-trial motion.

2            Since Plaintiffs' Counsel's fee was entirely contingent, the only certainty was that there

3    would be no fee without a successful result and that achieving success on behalf of Plaintiffs and

4    the Class depended upon Plaintiffs' Counsel expending significant amounts of time, effort, and

5    expense. Unlike Defendants' counsel who are paid hourly and reimbursed for their out-of-pocket

6    expenses on a current basis, Plaintiffs' Counsel has received no compensation for their efforts on

7    behalf of Plaintiffs and the Class during the course of this litigation. Absent this Settlement, a

8    material risk existed that Settlement Class Members and Plaintiffs' Counsel would obtain no

9    recovery. Plaintiffs' Counsel have risked non-payment of their out-of-pocket expenses and time

10   dedicated to working on this matter, knowing that if their efforts were not successful, no fee would

11   be paid. The contingent nature of Plaintiffs' Counsel's fee arrangement supports the requested fee

12   award.

13           e)      **The Reaction of the Settlement Class Supports the Requested Fee**

14           The reaction of the Settlement Class to date further confirms the reasonableness of the

15   requested fee. Here, the Settlement Class was notified of the Settlement and the request for

16   attorney's fees and reimbursement of expenses by a combination of first-class mail, publication,

17   email, and the settlement website (www.strategicclaims.net/paysign/, the "Settlement Website").

18   As of March 13, 2024, the Claims Administrator, Strategic Claims Services ("SCS"), has

19   disseminated the Notice[8] to approximately 38,860 potential Settlement Class Members and their

20   nominees, informing them of Lead Counsel's intention to apply to the Court for an award of

21   attorneys' fees of 33 and 1/3 percent of the Settlement Fund, reimbursement of expenses up to

22   $110,000, and awards to Plaintiffs up to $10,000 each. *See* Jafri Decl. Ex. 1 (Margery Craig Decl.)

23   at ¶¶4-9. Settlement Class Members were also informed of their right to object to such an

24   application. *Id. at* ¶13. In addition, SCS caused the Notice and other case-related documents to be

26   ---
     [8] "Notice" collectively refers to the Notice of Pendency and Proposed Settlement of Class Action,

27   ("Long Notice"), Summary Notice of Pendency and Proposed Class Action Settlement ("Summary

28   Notice"), and the Postcard Notice.

10

posted on the Settlement Website, and the Summary Notice to be published electronically on *GlobeNewswire*. *Id.* at ¶¶10, 12; Ex. D. While the time to object does not expire until March 20, 2024, to date, no objections to the request for attorneys' fees and expenses have been received.[9] *Id.* at ¶14. "The lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Should Plaintiffs receive any objections, Lead Counsel will address them in their reply papers. The lack of objections to the fees further supports the requested fee award.

### f)    The Lodestar Cross-Check Supports the Requested Fee

Courts often compare attorneys' lodestar with a fee request made under the percentage of the fund method as a "cross check" on the reasonableness of the requested fee. *See Vizcaino*, 290 F.3d at 1050; *see also In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness).

Plaintiffs' Counsel's combined lodestar to date is $978,388.30. The requested fee represents a multiplier of 1.27. Jafri Decl. ¶46. The Ninth Circuit recognizes when utilizing the percentage-of-fund approach in common fund cases and applying a lodestar cross-check, an award resulting in a multiplier several times the lodestar is appropriate as this rewards attorneys "for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051 (citation omitted). For example, the district court in *Vizcaino*, 290 F.3d 1043 approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id.* The Ninth Circuit affirmed, holding that the district court correctly considered the range of multiples applied in common fund cases, and noted that a range of lodestar multiples from 1.0 to 4.0 are frequently awarded. *Id.*;[10] *see also Steiner v. Am. Broad. Co.*, 248 F.

---

[9] Lead Counsel will address any objections that may be received by the March 20, 2024 deadline in the reply papers to be filed with the Court on April 10, 2024.

[10] Furthermore, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d

App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (granting 4.3 multiplier).

Plaintiffs' Counsel's lodestar of $978,388.30 represents 1,069.24 hours of work at current billing rates and amounts to a lodestar multiplier of 1.27, which is on the low end of the range of multipliers awarded in this Circuit.[11] With respect to billing rates, Plaintiffs' Counsel submit that the rates billed, for attorneys ranging from $600 to $1300 are much lower than peer defense-side law firms litigating matters of similar magnitude. Jafri Decl. ¶45.

Plaintiffs' Counsel will also do additional work in support of the Settlement and distribution of the Settlement Fund to Authorized Claimants for which they will receive no additional compensation, including: preparation for, and participation in, the final approval hearing; responding to any objections; supervising the claims administration process; moving for distribution of the Net Settlement Fund in accordance with SCS's recommendation; and supervising the distribution of the Net Settlement Fund to Authorized Claimants. The lodestar cross-check, therefore, supports this Court's awarding a fee of a third of the Settlement Fund.

Considering these factors together, including Plaintiffs' Counsel's risk, their efforts, and the result in this case, this Court should award a fee that amounts to a third of the Settlement Fund.

---

ed. 1986). "Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *In re Washington*, 19 F.3d at 1299.

[11] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989); *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      The Court Should Approve Reimbursement from the Settlement Fund of Plaintiffs' Counsel's Out-of-Pocket Expenses**

Plaintiffs' Counsel have incurred expenses in an aggregate amount of $57,471.31[12] in prosecuting the Action. This request is well below the $110,000 limit identified in the Notice and approved by this Court's Preliminary Approval Order. These expenses are outlined in Plaintiffs' Counsel's declarations submitted to the Court concurrently herewith. *See* Jafri Decl. Exs. 2-4.

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Reser*, 2013 WL 621865, at *5. In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("[Attorneys] may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.") (internal citations and quotation marks omitted); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

Here, Plaintiffs' Counsel seek expenses that are of the type routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund. *See Katz*, 2013 WL 11237202, at *8 (granting expenses for "filing fees … private investigation fees, service of process fees, … press release and notice fees, expert consulting costs, photocopying costs, and online legal research expenses, and travel associated with pursuing the case."); *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (allowing reimbursement for experts, investigators, travel, filing costs, photocopies, and online legal and factual research because they were all reasonable and necessary). The largest expenses Plaintiffs' Counsel incurred include fees paid to experts, investigators and the mediator. *See* Jafri Decl. Exs. 2-4.

In sum, Plaintiffs' Counsel's expenses, in an aggregate amount of $57,471.31, were

---

[12] The expense request is comprised of $45,901.76 from Pomerantz, $9,169.55 from Rosen, and $2,400 from Muehlbauer.

13

reasonably and necessarily incurred in the prosecution of the Action and should be approved.

### C. The Court Should Approve an Award to Plaintiffs for Their Reasonable Costs and Expenses Related to Their Service to the Class

In connection with Lead Counsel's request for reimbursement of litigation expenses, Plaintiffs seek reimbursement of $10,000 each in costs for their time dedicated to this litigation. The PSLRA provides that courts are empowered to approve such awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the Class. *See* 15 U.S.C. § 78u-4(a)(4). Accordingly, "[c]ourts across the country embrace incentive awards in light of the enormous benefits created by the class representatives." *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008). The Ninth Circuit has noted that "[i]ncentive fees for class representatives serve much the same function as attorneys' fees do in the class action context: they provide the economic incentive necessary to ensure that meritorious actions are prosecuted." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998).

Courts in the Ninth Circuit find that reimbursements to plaintiffs for their service to classes in the amount requested here are reasonable. *See e.g.*, *Immune Response,* 497 F. Supp. 2d at 1173-74 ($40,000 reimbursement to lead plaintiff); *Jenson*, 2008 WL 11338161, at *16 ($20,000 reimbursement to lead plaintiff); *Linney*, 1997 WL 450064, at *7 ($25,000 reimbursement to lead plaintiff); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 336 (N.D. Cal. 2014) ($10,000 reimbursement to lead plaintiffs);  *Xcel Energy, Inc.*, 364 F. Supp. 2d at 1000 (approving a $100,000 award to lead plaintiffs, and noting that awards to lead plaintiffs are important because they further "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000 as an incentive and for lost time).

Both Plaintiffs fulfilled their obligations as representatives of this Action, reviewing all pleadings, discussing with counsel Defendants' motion to dismiss and the opposition thereto, and participating in and approving the Settlement amount and reviewing the Settlement papers.

14

Plaintiffs detail their efforts on behalf of the Settlement Class in the Francisconi Decl. and the Shahzad Decl., attached as Exhibits 5 and 6 to the Jafri Decl. Accordingly, Plaintiffs respectfully request that this Court approve a payment of $10,000 to each Plaintiff.

## III.    CONCLUSION

For all the reasons stated above, in the final approval memorandum, in any reply papers that may be filed in support of either motion, and at the Settlement Hearing, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court: (a) award attorneys' fees in the amount of 33 and 1/3% of the Settlement Fund, i.e., $1,249,999.99 in cash; (b) approve reimbursement of $57,471.31in aggregate expenses; and (c) grant an award to Plaintiffs in the amount of $10,000 each.

Dated: March 13, 2024                          Respectfully submitted,

                                               **POMERANTZ LLP**

                                               By: /s/ *Omar Jafri*
                                               Omar Jafri (*pro hac vice*)
                                               Genc Arifi (*pro hac vice*)
                                               10 La Salle Street, Suite 3505
                                               Chicago, IL 60603
                                               Telephone: (312) 377-1181
                                               Facsimile: (312) 377-1184
                                               Email: ojafri@pomlaw.com
                                                        garifi@pomlaw.com

                                               *Lead Counsel for Plaintiffs*
                                               **MUEHLBAUER LAW OFFICE, LTD.**
                                               Andrew R. Muehlbauer, Esq.
                                               Nevada Bar No. 10161
                                               7915 West Sahara Avenue, Suite 104
                                               Las Vegas, Nevada 89117
                                               Telephone: 702-330-4505
                                               Fax: 702-825-0141
                                               Email: andrew@mlolegal.com

                                               *Liaison Counsel for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2024, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS** with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

*/s/ Andrew R. Muehlbauer*
Andrew R. Muehlbauer

16