**MUEHLBAUER LAW OFFICE, LTD.**
Andrew R. Muehlbauer
Nevada Bar No. 10161
7915 West Sahara Avenue, Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330.4505
Facsimile: (702) 825.0141
Email: andrew@mlolegal.com

*Liaison Counsel for Lead Plaintiffs*

**POMERANTZ LLP**
Omar Jafri
(admitted *pro hac vice*)
Genc Arifi
(admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:   ojafri@pomlaw.com
           garifi@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| IN RE PAYSIGN, INC. SECURITIES LITIGATION | Case No: 2:20-CV-00553-GMN-DJ<br><br>HON. GLORIA M. NAVARRO<br><u>CLASS ACTION</u><br><br>**DECLARATION OF OMAR JAFRI IN SUPPORT OF PLAINTIFFS': (1) CONSENTED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS** |

- 1 -

DECLARATION OF OMAR JAFRI IN SUPPORT OF PLAINTIFFS': (1) CONSENTED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS
2:20-CV-00553-GMN-DJA

I, OMAR JAFRI, declare as follows pursuant to 28 U.S.C. §1746:

1.        I am a partner at Pomerantz LLP ("Pomerantz"), court-appointed Lead Counsel for Lead Plaintiffs Johann Francisconi and Raheel Shahzad (collectively, "Plaintiffs") and the proposed Settlement Class,[1] and am admitted to appear *pro hac vice* before this Court. I have personal knowledge of the matters I declare herein.

2.        Pursuant to Rule 23 of the Federal Rules of Civil Procedure, I submit this declaration in support of Plaintiffs' (1) Consented Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement, and (2) Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Plaintiffs.

## I.        PRELIMINARY STATEMENT: THE REASONABLE RECOVERY ACHIEVED

3.        Plaintiffs and Lead Counsel achieved the $3,750,000 all cash Settlement after they: (a) investigated Paysign, Inc. ("Paysign" or the "Company") and the Individual Defendants, including reviewing Defendants' SEC filings and other public statements, to initiate this Action; (b) retained a private investigator and interviewed the Company's former employees; (c) drafted the operative Consolidated Amended Class Action Complaint for the Violations of the Securities Laws ("Amended Complaint") (ECF No. 22); (d) successfully opposed Defendants' motion to dismiss; (e) reviewed and analyzed thousands of documents produced by Defendants and third-parties; (f) prepared responses to Defendants' discovery requests; (g) prepared to take the depositions of Defendants' employees and third-party individuals; and (h) participated in a month's long, arms'-length mediation process that ultimately yielded this Settlement.

4.        The Amended Complaint asserts that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b), 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. The Amended Complaint alleges that during the Settlement Class Period, Defendants made materially false and misleading statements about

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement, filed on December 15, 2023 (the "Stipulation") (ECF No. 63-2).

Paysign's internal controls over financial reporting.

5. I declare that the Settlement is fair, reasonable, and adequate. Plaintiffs and Lead Counsel achieved the Settlement after successfully opposing Defendants' motion to dismiss and engaging in arms'-length negotiations that resulted in a mediator's proposal acceptable to all parties. When Settlement discussions began, Lead Counsel understood the strengths and weaknesses of Plaintiffs' case and were able to use this experience to reach this favorable Settlement.

6. The $3,750,000 Settlement Amount represents a recovery of almost 10% of Plaintiffs' estimated damages of $37.7 million. This recovery significantly exceeds the average recovery in comparable securities class actions. According to NERA, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, between 2013 and 2022, the median recovery as a percentage of damages for securities class actions with damages between $20 million and $49 million was 5.2%.[2]

7. Plaintiffs and Lead Counsel support the Settlement as it provides the Settlement Class with a guaranteed recovery while avoiding the risks associated with protracted, complex litigation.

8. As discussed in detail in Section IV, *infra*, Plaintiffs faced risks at the merits stage. Securities class actions are complex and expensive to litigate, and certain elements of the claim often turn on expert testimony on complicated subjects. Moreover, the resources Defendants could tap here are limited, and further litigation would only deplete those resources as opposed to serving as an immediate recovery for the Settlement Class.

9. Considering all the circumstances and risks both sides faced if litigation continued, the parties concluded that settlement on the terms upon which they agreed was in their respective best interests. Lead Counsel, The Rosen Firm P.A. ("Rosen Firm") and Muehlbauer Law Office, Ltd. ("Muehlbauer," and collectively with Pomerantz, "Plaintiffs' Counsel"), both of which worked under the direction of Lead Counsel, prosecuted this Action on a contingent basis and advanced all litigation expenses, shouldering completely the risk of failure.

10. The Court should grant Lead Counsel's fee application seeking one-third of the Settlement Fund as it is fair and reasonable. Lead Counsel's efforts, at their financial risk, conferred

---

[2] https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf.

a benefit on the Settlement Class. This fee request is within the range of those frequently awarded in comparable securities class actions. Additionally, Plaintiffs' Counsel, in total, expended 1,069.24 hours of attorney and other professional time and $57,471.31 in out-of-pocket expenses necessary to litigate this complex action. Thus, Plaintiffs respectfully request the Court to reimburse Plaintiffs' Counsel for these routine litigation expenses.

11. The Court should also consider a payment to each Plaintiff of $10,000 to compensate them for their efforts, including the time each dedicated to litigating the Action on behalf of the Settlement Class. This request aligns with similar requests in other district courts in the Ninth Circuit.

## II.    PROCEDURAL HISTORY

12. On March 16, 2020, Paysign disclosed that it would be unable to file its Annual Report on Form 10-K for the fiscal year that ended on December 31, 2019 ("2019 10-K"). ¶75.[3] After another delay in filing the 2019 10-K and accompanying stock price declines, ¶¶77-78, on April 3, 2020, Defendants filed the 2019 10-K, disclosing that Paysign's internal controls over financial reporting were ineffective due to material weaknesses. ¶¶79-80. For example, Paysign had retained an employee "barred from practice before the [SEC] who assisted the Company in accounting matters related to the preparation of financial statements for 2017, 2018, and 2019." ¶79. In addition to admittedly hiring an employee barred from practice before the SEC, the Company further admitted to "ineffective oversight of information technology general controls pertaining to user access and the Company's systems change management." ¶80. On these disclosures, on two trading days, the price of Paysign common stock fell from $5.52 on the day before the first disclosure, ¶76, to $4.03 on the day after the last, ¶78, damaging investors.

13. On March 19, 2020, plaintiff Yilan Shi filed this class action. (ECF No. 1). On December 2, 2020, the Court consolidated three cases under the current caption, appointed Plaintiffs as Lead Plaintiffs, and approved Plaintiffs' selection of Pomerantz as Lead Counsel and Muehlbauer Law Office, Ltd. as Liaison Counsel for the proposed Class. (ECF No. 21).

14. On January 12, 2021, Plaintiffs filed the Amended Complaint (ECF No. 22), alleging

---

[3] All ¶__ and ¶¶___ citations are to the Amended Complaint filed at ECF No. 22.

- 4 -

violations of §§ 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, on behalf of a Class of all purchasers of Paysign common stock during the period between March 12, 2019 and March 31, 2020, both dates inclusive.

15. On March 15, 2021, Defendants moved to dismiss the Amended Complaint (ECF No. 34). On April 29, 2021, Plaintiffs opposed Defendants' motion to dismiss (ECF No. 40). On February 9, 2023, the Court granted in part and denied in part Defendants' motion to dismiss, sustaining the Amended Complaint against all Defendants but Spence for whom the Court granted dismissal (ECF No. 42).

16. On December 15, 2023, Plaintiffs filed the Consented Motion for Preliminary Approval of Proposed Class Action Settlement (hereafter the "Preliminary Approval Motion") (ECF No. 63). On January 4, 2024, the Court granted the Preliminary Approval Motion (hereafter the "Preliminary Approval Order") (ECF No. 64).

### III.    PLAINTIFFS' COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER AND REACTION OF THE SETTLEMENT CLASS TO DATE

17. Pursuant to and in compliance with the Preliminary Approval Order, the Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), mailed the Postcard Notice to potential Settlement Class Members, published Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") in *GlobeNewswire*, and posted at a URL it dedicated to this Settlement, the Notice of Pendency and Proposed Settlement of Class Action, ("Long Notice") and the Proof of Claim and Release Form ("Proof of Claim"). *See* Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl."), attached hereto as **Exhibit 1**.

18. The Notice[4] described the claims Plaintiffs asserted, providing an overview of the litigation, the Settlement's terms, the request for attorneys' fees of no more than one-third of the Settlement Fund, reimbursement of litigation expenses up to $110,000, and an Award to Plaintiffs of $10,000 each. The Notice further explains the rights of and process for Settlement Class Members

---

[4] "Notice" means collectively the Long Notice, Summary Notice, and the Postcard Notice.

- 5 -

filing a claim, objecting to the Settlement, or requesting exclusion from the Settlement Class. The Long Notice, attached to the Craig Decl. as Exhibit A, includes the comprehensive Plan of Allocation, detailing how SCS, under Lead Counsel's direction, will divide and distribute the Net Settlement Fund.

19.    To ascertain the members of the Settlement Class to whom SCS distributed Notice, first, Paysign provided SCS with a shareholder list from its transfer agent. SCS then contacted 2,113 nominees, including 814 banks and brokerage companies as well as 1,299 mutual funds, insurance companies, pension funds, and money managers. Craig Decl., ¶4. From the names it received, SCS mailed 16,437 Postcard Notices to potential Settlement Class Members. *Id*. at ¶6. Additionally, a nominee informed SCS that it emailed 22,410 of its customers informing them of the Settlement and providing a link to the Notice and Proof of Claim on SCS's website. *Id*. at ¶7. Upon request from 13 potential Settlement Class Members, SCS emailed them with direct links to SCS's website. *Id*. In total, 38,869 potential Settlement Class Members were notified by either mailed Postcard Notice or email the direct link to the location of the Notice and Proof of Claim on the settlement webpage. *Id.* at ¶8.

20.    On January 20, 2024, SCS published Summary Notice electronically over *GlobeNewswire*. *Id*. at ¶10.

21.    SCS also maintains and posted to a Settlement-dedicated URL a summary of the Settlement, the Long Notice, Proof of Claim, the Stipulation of Settlement, and the Preliminary Approval Order. *Id*. at ¶12.

22.    Pursuant to the Preliminary Approval Order, Settlement Class Members have until March 20, 2024, to request exclusion or to submit objections to any aspect of the Settlement including awarding of fees and expenses. *Id*. at ¶¶13-14. To date, SCS and Lead Counsel have not received any objections and or requests for exclusion. *Id*. If we receive any objections or further exclusion requests, we shall address them in Plaintiffs' reply papers in further support of Final Approval.

## IV.    PLAINTIFFS FACED RISKS IN THIS ACTION IF LITIGATION CONTINUED

23.    Prior to reaching the Settlement, Plaintiffs, through Lead Counsel, reviewed publicly

available documents, gathered information from their investigator, and retained consultants and experts to theorize about market efficiency, price impact, and loss causation. Despite Plaintiffs' and Lead Counsel's belief that Plaintiffs' claims were meritorious, they realize that protracted litigation does not guarantee recovery. Plaintiffs faced risks and obstacles to achieving a greater recovery if the case continued. Plaintiffs and Lead Counsel considered these challenges prior to and during settlement negotiations.

24. To prevail on their Exchange Act claims, Plaintiffs would need to prove: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Khoja v. Orexigen Therapeutics*, *Inc*., 899 F.3d 988, 1008 (9th Cir. 2018). Defendants would likely argue at summary judgment and trial that Plaintiffs cannot prove these elements.

25. Scienter is a difficult element to prove that often turns on circumstantial evidence. Direct evidence rarely exists. Accordingly, Plaintiffs confronted difficult factual and legal challenges in connection with proving scienter. How a jury would interpret and apply these facts to the law is not certain. While Plaintiffs believe they could amass evidence to prove that Defendants recklessly misled investors, if the Court or a jury were to accept Defendants' arguments, the Settlement Class would recover nothing.

26. Plaintiffs also faced challenges to establishing damages at trial. A jury would need to accept Plaintiffs' expert's testimony over Defendants' expert's testimony to arrive at a damages figure. Because establishing damages would involve a "battle of experts," issues for the jury to sift through and weigh, the outcomes of summary judgment and trial are not certain.

27. Even if Plaintiffs prevailed on liability on any of their claims and the jury awarded damages, Defendants would likely appeal the verdict and award. The appeals process would likely span several years, during which time the Settlement Class would receive nothing. In addition, an appeal would carry with it the risk of reversal, in which case the Settlement Class would receive no recovery despite having prevailed at trial.

## V.    THE PLAN OF ALLOCATION

28. As provided in the Long Notice, SCS will distribute the Net Settlement Fund

- 7 -

according to the Plan of Allocation the Court preliminarily approved (Ex. A to the Craig Decl. at 5-8). The Plan of Allocation was designed to distribute the Net Settlement Fund equitably and rationally. Lead Counsel developed the Plan of Allocation after consulting an expert on damages. Plaintiffs and Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to distribute the Net Settlement Fund among Authorized Claimants.

29.    The Plan of Allocation provides for the Net Settlement Fund's distribution among Authorized Claimants on a *pro rata* basis based on "Recognized Loss" formulas tied to liability and damages. The formula considers the amount of alleged artificial inflation in the prices of Paysign publicly traded common stock.

30.    Pursuant to the Plan of Allocation, SCS, under Lead Counsel's direction, will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Loss compared to the aggregate Recognized Losses of all Authorized Claimants. Calculation of Recognized Loss will depend upon several factors, including the dates Authorized Claimants purchased the securities, and whether the securities were sold during the Class Period, and if so, when.[5]

31.    In sum, the proposed Plan of Allocation, developed with Plaintiffs' damages consultant, was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Plaintiffs and Lead Counsel respectfully submit that the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved.

## VI.    THE APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS IS REASONABLE

### A.    Consideration of Relevant Factors Justify the Award

32.    For its efforts on behalf of the Settlement Class, Lead Counsel is applying for compensation from the Settlement Fund on a percentage basis. As explained in the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for an Award of Attorneys' Fees,

---

[5] After SCS completes the claims administration process, giving rejected claimants the opportunity to contest the rejection of their claims, Plaintiffs will file a motion seeking the Court's approval of the Claims Administrator's findings and authority to distribute the Net Settlement Fund.

Reimbursement of Litigation Expenses, and Award to Plaintiffs, ("Fee Brief"), courts within the Ninth Circuit recognize that the percentage-of-recovery method is the prevailing and appropriate method of determining attorneys' fees.

33. The Notice stated that Lead Counsel would seek up to one-third of the Settlement Fund. Craig Decl., Exs. A, C-D. Lead Counsel seeks a fee award of one-third of the Settlement Fund. For the reasons discussed herein, this award is fair and appropriate.

### i. The Favorable Settlement Achieved

34. The Settlement Plaintiffs achieved on behalf of themselves and the Settlement Class is a factor courts consider in granting a fee award. Plaintiffs' damages expert estimated that the maximum damages were approximately $37.7 million. The Settlement will compensate Settlement Class Members for almost 10% of the estimated maximum damages. Considered in view of the substantial risks and obstacles to recovery if the Action was to continue through summary judgment, to trial, and through likely post-trial motions and appeals, the $3,750,000 million Settlement is fair, reasonable, and adequate.

35. This recovery resulted from thorough investigative efforts, motion practice, and settlement negotiations. As a result of this Settlement, Settlement Class Members will benefit and receive compensation for their losses and avoid the very substantial risk of no recovery in the absence of a settlement.

### ii. The Risks and Complexities of Contingent Class Action Litigation

36. From the outset, Lead Counsel understood that it was embarking on complex, expensive, and lengthy litigation with no guarantee of compensation for their investment of time and money the case would require. In undertaking that responsibility, Lead Counsel dedicated sufficient resources to the Action's prosecution, covering out-of-pocket the costs that this required. With an average lag time of several years for these cases to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Plaintiffs' Counsel received no compensation during the course of the Action but have spent 1,069.24 hours of time for a total lodestar of $978,388.30 and have incurred $57,471.31 in out-of-pocket expenses in prosecuting

the Action for the benefit of the Settlement Class.

37. Lead Counsel also bore the risk that it would fail to recover on behalf of Plaintiffs and the Class. Even with competent efforts, success in contingent-fee litigation, such as this, is never assured, and counsel risked receiving nothing and failing to recover the monies it expended out-of-pocket.

38. Lead Counsel knows from their experience that the commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories needed to sustain a complaint or win at trial, or to convince sophisticated defendants to engage in serious settlement negotiations at meaningful levels. Lead Counsel is cognizant of hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a judge's or jury's decision following a trial on the merits, no recovery was achieved.

39. Proceeding to summary judgment, trial, or appeal requires counsel to outlay, bear material costs, and dedicate considerable uncompensated time. The fees that courts award in successful cases cover material overhead expenses incurred during litigation.

40. Courts have repeatedly found that appointing experienced firms such as Pomerantz to serve as class counsel is in the public interest, enabling private enforcement of the federal securities laws and regulations. Private enforcement of the federal securities laws occurs only if investors obtain a semblance of parity in representation with that available to corporate defendants. To realize this public policy, courts award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

41. As discussed in greater detail above, this case was fraught with significant risk factors concerning liability and damages. Plaintiffs' success was by no means assured. Were this Settlement not achieved, and even if Plaintiffs prevailed at trial, Plaintiffs and Lead Counsel faced potentially years of costly and risky appellate litigation against Defendants, with ultimate success far from certain and the prospect of no recovery significant. It is also possible that a jury could have found no liability or no damages. Lead Counsel, therefore, respectfully submits that based upon the considerable risk

- 10 -

factors present, this case involved a very substantial contingency risk to counsel.

### iii. Lead Counsel's Efforts and the Lodestar Cross-Check

42. Throughout the pendency of the Action, Lead Counsel focused on advancing the litigation to achieve the best outcome for the Settlement Class, whether through settlement or trial, by the most efficient means necessary.

43. I attach hereto as **Exhibits 2 - 4** declarations from Plaintiffs' Counsel, submitting them in support of the request for an award of attorneys' fees and payment of litigation expenses. *See* Declaration of Omar Jafri on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), the Declaration of Jacob A. Goldberg of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.") and the Declaration of Andrew R. Muehlbauer of Muehlbauer Law Office, Ltd. ("Muehlbauer Fee Decl.").

44. Included in the Pomerantz Fee Decl., the Rosen Fee Decl. and the Muehlbauer Fee Decl. are charts detailing the amount of attorney and professional support staff time spent on the litigation and the lodestar calculations, *i.e.*, their hours multiplied by their billing rates. As explained in each declaration, they were prepared from contemporaneous daily time records regularly prepared and maintained by the respective firms.

45. The hourly billing rates of Plaintiffs' Counsel here range from $600 to $1300 for attorneys. The hourly rates for attorneys and professional support staff included in these schedules are reasonable and in line with firms in the New York City, Chicago, Philadelphia Metro area, and Las Vegas legal markets.

46. Plaintiffs' Counsel have collectively expended 1,069.24 hours in the prosecution and investigation of the Action comprised of 561.38 hours for Pomerantz, 433.86 hours for the Rosen Firm, and 74 hours for Muehlbauer. *See* Pomerantz Fee Decl. at ¶5, Rosen Fee Decl. at ¶5, and Muehlbauer Fee Decl. at ¶5. The resulting collective lodestar is $978,388.30 comprised of $484,476.30 for Pomerantz, $431,012 for the Rosen Firm, and $62,900 for Muehlbauer. *Id*. Pursuant to a lodestar "cross-check," the requested fee of 33 and 1/3% of the Settlement Fund ($1,250,000) results in a lodestar multiplier of 1.27, which is on the low end of the range approved in contingency cases, and does not include any time that will necessarily be spent from this date forward

- 11 -

administering the Settlement, preparing for and attending the Settlement Hearing, assisting Settlement Class Members, and moving for a distribution order.

### iv.  The Skill Required and Quality of the Work

47.    Lead Counsel is an experienced and skilled securities litigation law firm. Pomerantz has been appointed in numerous securities class actions throughout the country and has achieved impressive recoveries for investors. Pomerantz's recent notable achievements include securing a $3 billion settlement for defrauded investors in *In re Petrobras Securities Litigation*, one of the largest U.S. securities class action settlements ever. Thus, the Settlement Class has benefited from Lead Counsel's experience and considerable time and effort in this case, which helped achieve the Settlement.

48.    Accordingly, the Settlement Class was represented by skilled and able counsel who should be reimbursed for their efforts.

### B.    Request for Litigation Expenses

49.    Plaintiffs' Counsel seeks payment from the Settlement Fund of $57,471.31in litigation expenses Plaintiffs' Counsel reasonably and necessarily incurred in connection with commencing and prosecuting the claims against Defendants. Of this amount, Pomerantz incurred $45,901.76 in out-of-pocket expenses, the Rosen Firm incurred $9,169.55 in out-of-pocket expenses and Muehlbauer incurred $2,400 in out-of-pocket expenses. These amounts are reflected in the books and records of each firm. *See* Pomerantz Fee Decl., Rosen Fee Decl. and Muehlbauer Fee Decl.  The amount sought is, in fact, substantially lower than the $110,000 limit the Court approved in the Preliminary Approval Order.

50.    From the beginning of the case, Plaintiffs' Counsel was aware that they might not recover any expenses. Thus, Plaintiffs' Counsel was motivated to, and did, take steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of this case.

51.    Plaintiffs' Counsel seeks reimbursement of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, financial expert fees, investigator fees, mediation fees, travel costs, legal and factual research, press

- 12 -

release and notice to class member fees, postage fees, court filings and *pro hac vice* fees.

52. All of the litigation expenses incurred, which total $57,471.31, were necessary to prosecute this litigation.

**C.    Award to Plaintiffs**

53. Plaintiffs seek an award for the time, effort, and oversight each dedicated to this litigation. The Private Securities Litigation Reform Act of 1995 empowers courts to approve such requests. Each seeks $10,000. I attach hereto, as **Exhibits 5 and 6,** the Declarations of Johann Francisconi and Raheel Shahzad, outlining the participation of Plaintiffs in securing this result for the Settlement Class.

**VII.    SETTLEMENT CLASS' REACTION TO THE FEE AND EXPENSE REQUESTS AND AWARD TO PLAINTIFFS**

54. Of the 38,860 potential Settlement Class Members notified by Postcard Notice or email advising them of the fees, litigation expenses and awards that could be sought, as of the date of this Declaration, no member of the Settlement Class has objected. If a member of the Settlement Class objects prior to the March 20, 2024 deadline for objections, Lead Counsel will respond to any objections received in its reply brief.

**VIII.    CONCLUSION**

55. In view of the recovery to the Settlement Class and the substantial risks of this litigation, Lead Counsel believes that the Settlement is fair, reasonable, and adequate and respectfully requests the Court to finally certify the Settlement Class, approve the Notice to the Settlement Class, approve the Settlement as fair, reasonable, and adequate, and approve the Plan of Allocation.

56. Further, Lead Counsel believes that attorneys' fees in the amount of one-third of the Settlement Fund, reimbursement of $57,471.31 in out-of-pocket expenses, and Awards to Plaintiffs of $10,000 each are fair and reasonable. As such, Lead Counsel respectfully requests the Court to grant final approval of the Settlement. Lead Counsel also respectfully requests the Court to approve the application for attorneys' fees, reimbursement of litigation expenses, and reimbursement Awards to Plaintiffs.

- 13 -

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 13, 2024, at Chicago, IL.

/s/*Omar Jafri*
Omar Jafri

- 14 -